Lester **RAMSEY**, Petitioner,

v.

**UNITED STATES of America,** Respondent.

No. 76 C 3651.

United States District Court, N. D. Illinois, E. D.

April 17, 1978.

Lester Ramsey, pro se.

R. T. McAllister, Asst. U. S. Atty., Chicago, Ill., for respondent.

## MEMORANDUM AND ORDER

ROBSON, Senior District Judge.

This cause is before the court on its own motion that petitioner show cause why his amended Section 2255 motion should not be dismissed. The cause is also before the court on petitioner's Rule 35 motion to modify his sentence. For the reasons hereinafter stated, petitioner's amended Section 2255 motion is dismissed, and his Rule 35 motion to modify his sentence is denied and dismissed.

## THE AMENDED SECTION 2255 MOTION

### BACKGROUND

Petitioner, Lester Ramsey, was convicted by a jury of conspiring to buy and sell heroin, the late Judge Richard W. McLaren presiding. *United States v. Lester Ramsey,* 71 CR 456. He appealed his conviction on the ground that (1) the wiretapping and electronic surveillance statute is unconstitutional on its face, (2) the wiretap conducted in his case violated a portion of the authorizing order which directed agents to minimize interception of nonincriminating statements, and (3) the trial court erred by failing to grant immunity to a defense witness who exercised his privilege against self-incrimination. The Court of Appeals for the Seventh Circuit affirmed his conviction. *United States v. Ramsey,* 503 F.2d 524 (7th Cir. 1974), *cert. denied,* 420 U.S. 932, 95 S.Ct. 1136, 43 L.Ed.2d 405 (1975).

On September 30, 1976, some three and one-half years after his conviction and well over a year after his petition for certiorari was denied, Ramsey filed a pro se motion to vacate his sentence pursuant to 28 U.S.C. § 2255. On November 15, 1976, this court granted the government's motion to dismiss

the Section 2255 motion pursuant to Fed.R. Civ.P. 12(b)(6). On January 17, 1977, Ramsey filed an amended petition setting forth additional facts. The court granted Ramsey's application to resubmit the motion to vacate his sentence[1] and ordered the government to show cause why the relief requested should not be granted.

In his amended Section 2255 motion, Ramsey claims that his constitutional rights under the Fifth and Sixth amendments were violated at his trial. Specifically, he asserts that his Fifth amendment right against compulsory self-incrimination was violated when, during closing argument, the prosecutor stated that he, Ramsey, is "guilty because he did not take the stand because of his guilt." He further avers that the judge, upon hearing the prosecutor's remark, did not, *inter alia*, instruct the jurors to disregard the remark and did not inform them that Ramsey's failure to take the stand was not evidence of his guilt.[2] Rather, Ramsey asserts that the trial judge stated that "such statements will be stricken from the records." Moreover, he claims that the trial judge had the prosecutor's remarks physically removed from the transcript, thus depriving him of an accurate transcript on appeal.[3]

On February 10, 1977, the government filed a motion to dismiss pursuant to Fed.R. Civ.P. 12(b)(6). On April 11, 1977, the court denied the government's motion to dismiss and ordered the government to file an answer. On June 13, 1977, the government's motion for leave to file its answer instanter was granted. The answer denies the allegations of Ramsey's amended Section 2255 motion.

On June 13, 1977, the government reported that it was having great difficulty locating the transcript of Ramsey's trial and that the warehouse did not have it. It suggested that Ramsey might have a copy of the transcript. Accordingly, per the government's motion, an order was entered requiring Ramsey to produce for the government's inspection the transcript of the trial in *United States v. Lester Ramsey*, 71 CR 456, and the pages and documents which support his contention that the trial judge removed certain statements from the record.

On June 20, 1977, Ramsey filed an answer to the court's June 13th order to produce. It was totally unresponsive. In the answer, however, Ramsey admitted that his attorney did not object at trial to the prosecutor's alleged comment on his failure to testify.[4]

During the early part of the summer of 1977, the court repeatedly instructed the government to obtain, type, and forward to the court a complete copy of the record of Ramsey's trial. The government did not procure the record of Ramsey's trial, however, it eventually located the court reporter at his trial.

In October of 1977, the government filed a motion for summary judgment. In support thereof, it filed a transcript of the closing argument at petitioner's trial. The transcript was prepared by the official court reporter at Ramsey's trial, based on her notes. The government also filed the court reporter's sworn affidavit. She stated, *inter alia*, that she reported the entire

---

**1.** Ramsey entitled his motion " 'Writ of Error of Coram Nobis' and Resubmittion [sic] of Motion to Vacate & Set Aside of Title 28 U.S.C. Section 2255." Hereinafter, the motion will be referred to as petitioner's amended Section 2255 motion.

**2.** These allegations will be referred to hereinafter as the "Fifth Amendment Claim."

**3.** These allegations will be referred to hereinafter as the "Tampering Claim."

**4.** Ramsey also states that he unsuccessfully asked his attorney to appeal his Fifth Amendment claim. He does not, however, claim that he asked counsel to object to the prosecutor's alleged comment on his failure to testify, or that he asked his attorney to have the court instruct the jury to disregard the alleged comment. Rather, Ramsey contends that his attorney violated his "right by inducing inefficiency when he failed to object to the remarks of the prosecutor."

arguments made by counsel for the government and that "[s]he is unaware of any testimony or statements by counsel being struck from the record by Judge McLaren." Ramsey filed a memorandum in response in which he argued that the government's motion should be denied and that an evidentiary hearing should be held.[5] The government did not file a reply memorandum.[6]

After completion of the briefing schedule, the court was able to obtain, through its own efforts, the record of the proceedings in *United States v. Lester Ramsey*, 71 CR 456. On January 13, 1978, the court denied the government's motion for summary judgment, stating as follows:

> A review of the record indicates that the pages of the transcript which the government (and petitioner) have filed with respect to the motion are from petitioner's first trial, which was declared a mistrial because of a deadlocked jury, and not his second trial, at which he was convicted. Clearly, the portion of the record filed by the government is irrelevant.

In the January 13th order, the court also served notice on petitioner that the court, on its own initiative, would dismiss his amended Section 2255 motion in light of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and his failure to raise his constitutional claims at trial and on direct appeal, unless he made a showing within thirty days why such dismissal should not be ordered.[7] Petitioner has filed an answer to this order.[8]

## UNAVAILABILITY OF COLLATERAL RELIEF

### Fifth Amendment Claim

In deciding whether collateral relief is available to the petitioner, the court must determine the standard of collateral review that should apply where, as here, there has been a failure to object to an alleged constitutional violation occurring during the trial of a *federal* criminal defendant. This court is of the opinion that recent decisions of the United States Supreme Court, especially *Wainwright v. Sykes, supra* [hereinafter *Sykes*], reveal a new and stricter attitude toward collateral review of federal constitutional claims which forecloses review of petitioner's Fifth Amendment claim.

The court's analysis begins with *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) [hereinafter *Fay*]. In *Fay*, the Supreme Court articulated the standard to be used in determining whether a procedural default serious enough to bar collateral review of the merits of a belatedly asserted constitutional claim of a *state* prisoner has taken place. The Court adopted the "deliberate bypass" or "knowing waiver" standard of *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and made federal habeas review generally available to

5. Ramsey also filed one page of the trial transcript from his first trial, arguing that the transcript the government filed was not accurate, and requesting the court reporter be required to testify as to the transcript's authenticity. Apparently, Ramsey changed his mind as to when the prosecutor commented on his failure to testify. On the page of the transcript he filed, he indicated that the comments were made just before, as opposed to during, closing argument.

6. On December 29, 1977, the court received petitioner's motion to dismiss the government's motion for summary judgment. The motion added nothing to the materials already before the court.

7. A district court has the power to dismiss an action on its own motion. 5 Wright & Miller, Federal Practice and Procedure: Civil, § 1357; *Literature, Inc. v. Quinn*, 482 F.2d 372 (1st Cir. 1973). Where, however, the dismissal is granted pursuant to Fed.R.Civ.P. 12(b)(6), the proper procedural steps should ordinarily be taken, and these include giving notice of the proposed action and providing an opportunity to submit argument in opposition to it. *See, e. g., Literature, Inc. v. Quinn, supra* at 374; *Dodd v. Spokane County, Washington*, 393 F.2d 330, 334 (9th Cir. 1968); *Hutchinson v. Proxmire*, 431 F.Supp. 1311, 1333 (W.D.Wis.1977).

8. Because of difficulty in procuring a copy of the *Sykes* decision, petitioner was granted a thirty-day extension, and the court furnished him with a copy of the *Sykes* opinion.

state defendants, absent a knowing and intelligent waiver of a federal constitutional right or contention. Under the *Fay* "deliberate bypass" standard, the burden is on the government to demonstrate, and the court to find, that there was a knowing and intelligent waiver of the petitioner's constitutional claim in state court. The determination ordinarily requires an evidentiary hearing, and if the district court cannot find persuasive evidence of a knowing and intelligent waiver, the court should proceed to consider the petitioner's constitutional claims. *See, e. g., Fay v. Noia, supra* at 439, 83 S.Ct. 822; *Humphrey v. Cady*, 405 U.S. 504, 517, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972).

Although *Fay* was a Section 2254 case involving a state prisoner, federal courts consistently applied the "deliberate bypass" standard to federal prisoners in Section 2255 cases. *See, e. g., Sanders v. United States*, 373 U.S. 1, 18, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) (principles developed in *Fay* govern the circumstances under which a prisoner may be foreclosed from federal collateral review); *Whitney v. United States*, 513 F.2d 326 (8th Cir. 1974). Consequently, whether the procedural default occurred in state or federal court, the operative test became the "deliberate bypass" standard. *Jiminez v. Estelle*, 557 F.2d 506, 508 (5th Cir. 1977), and cases cited.

Recently, however, in a Section 2254 case, the Supreme Court extended what has been a gradual retreat from the *Fay* standard.[9] In *Wainwright v. Sykes, supra,* the Supreme Court held that federal habeas review of the voluntariness of a confession was barred by a state prisoner's failure to object at trial as required by Florida's "contemporaneous objection" rule, absent a showing of "cause" for the failure to timely and contemporaneously object and "prejudice" resulting from the alleged constitutional violation. Accordingly, the "cause

and prejudice" standard replaces the "deliberate bypass" standard in Section 2254 cases, at least where the waiver relates to events during trial such as waived objections or counsel's tactical decisions. *Id.* at 88 n.12, 91 n.14, 97 S.Ct. 2497. *See also id.* at 91–94 & nn. 1–2, 97 S.Ct. 2497 (Burger, C. J., concurring), and *id.* at 94–97 & nn. 1–2, 97 S.Ct. 2497 (Stevens, J., concurring).

A question left open by *Sykes*, and the question before this court, is whether the "deliberate bypass" standard which federal courts have been applying in Section 2255 cases should likewise be replaced by the "cause and prejudice" standard where, as here, the waiver relates to decisions within a defense attorney's control during trial such as waived objections or counsel's tactical decisions. This court is of the opinion that the question must be answered affirmatively.

The court does not see any reason why the standard for collateral review of federal prisoners' constitutional claims should be any different than that for collateral review of state prisoners' constitutional claims. Federal courts have applied the "deliberate bypass" standard to both Section 2254 and Section 2255 cases, and now that it has been rejected in Section 2254 cases involving waived objections and tactical decisions, it is both logical and consistent to reject the standard in Section 2255 cases involving waived objections and tactical decisions. *See also* Professor Wright's comment in note 10, *infra*. Moreover, nothing in 28 U.S.C. § 2255 requires this court to apply the "deliberate bypass" standard in Section 2255 cases.

Petitioner suggests that the "deliberate bypass" standard should continue to apply in Section 2255 cases because *Sykes* was solely concerned with "the adequacy of state grounds to bar federal habeas review," and that the decision rested upon

---

**9.** The retreat from the *Fay* standard began in *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), and it was contin-

ued in *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976). The cases are discussed *infra*.

principles of federalism. *Id.* at 81, 97 S.Ct. at 2503. This view of the case, however, is too narrow and overlooks the other reasons why the Supreme Court has limited collateral review of state convictions. In *Sykes,* the Court was equally concerned with insuring that the state criminal trial remain the decisive time and place for determining all issues which bear on the charges against a defendant. The Court articulated many important policy reasons for making the trial the " 'main event,' so to speak, rather than a 'tryout on the road' for what will later be the determinative federal habeas hearing." [10] *Id.* at 90, 97 S.Ct. at 2508. Some of those reasons included promoting judicial efficiency and economy, encouraging finality in criminal litigation, and discouraging "sandbagging" on the part of defense lawyers. This court does not believe that these policy considerations are any less important in a federal criminal trial. Indeed, if defense counsel thinks that an action of a federal judge will deprive his client of a constitutional right, there is every reason for making his objection in a timely manner. *Id.*

Another reason why the "cause and prejudice," as opposed to the "deliberate bypass," standard should apply to both state and federal prisoners seeking collateral review is that the Supreme Court has not made a distinction between Section 2254 and Section 2255 cases. On the contrary, the Supreme Court has blurred any distinc-

tion. The *Sykes* decision was supported by an analysis of both Section 2254 and Section 2255 cases. In fact, the "cause and prejudice" standard applied in *Sykes* originated in a Section 2255 case and was subsequently extended to a Section 2254 case. *See Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed. 216 (1973) [hereinafter *Davis* ], and *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976) [hereinafter *Francis* ].

In viewing Section 2254 and Section 2255 cases as requiring the same standard for procedural defaults, the Supreme Court has attempted to treat state and federal prisoners equally in terms of their ability to obtain collateral review.[11] For example, in *Davis* the Court held that the waiver standard set forth in Fed.R.Crim.P. 12(b)(2)— not the *Fay* concept of waiver—controls an untimely claim of grand jury discrimination in a Section 2255 proceeding. In *Francis,* the rule of *Davis* was extended to the parallel case of a state procedural requirement that challenges to a grand jury composition should be raised before trial. The Court acknowledged that there was power in the federal courts to entertain such an application, but rested its decision on "considerations of comity and concerns for orderly administration of criminal justice . . ." *Francis v. Henderson, supra* 425 U.S. at 539, 96 S.Ct. at 1710. Although there was no counterpart provision of the state rule allowing an exception upon a showing of

10. The notion of making the criminal trial the decisive event is not new and has surfaced in a number of other recent Supreme Court decisions which have restricted the availability of collateral review of both state and federal convictions. *See e. g., Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) and *Davis v. United States,* 411 U.S. 233, 240–41, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). In *Stone v. Powell, supra,* a Section 2254 case the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* 428 U.S. at 482, 96 S.Ct. at 3046. (footnote omitted). One commentator has stated that

"[t]he same rule surely must apply to a federal prisoner seeking relief under § 2255." Wright, Law of Federal Courts, § 53 at 246, n.68 (1976).

11. If anything, there are more reasons to apply a more lax standard for state prisoners (Section 2254 cases) than for federal prisoners (Section 2255 cases). This is because of the institutional constraints on the exercise of the Supreme Court's certiorari jurisdiction to review state convictions, because of the concern that state judges may be unsympathetic to federal claims, and so that federal courts can have the "last say" with respect to questions of federal law. *See generally Fay v. Noia, supra.* *See also Stone v. Powell, supra* 428 U.S. at 520, 96 S.Ct. 3037 (Brennan, J., dissenting).

cause, the Court nevertheless concluded that the standard derived from the federal rule should apply.[12] The Court reasoned that " '[p]lainly the interest in finality is the same with regard to both federal and state prisoners. . . . There is no reason to . . . give greater preclusive effect to procedural defaults by federal defendants than to similar defaults by state defendants. To hold otherwise would reflect an anomalous and erroneous view of federal-state relations.' " *Id.* at 542, 96 S.Ct. at 1711, quoting *Kaufman v. United States,* 394 U.S. 217, 228, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969). As the interest in finality is the same with both state and federal prisoners, this court does not believe that there is any reason to give lesser preclusive effect to procedural defaults by federal defendants than to similar defaults by state defendants. If the court were to apply the "deliberate bypass" standard in this case, it would be sanctioning unequal treatment of federal and state prisoners seeking collateral review.

It should be emphasized that replacing the "deliberate bypass" standard with the "cause and prejudice" standard in Section 2255 cases will not preclude meritorious constitutional claims of federal criminal defendants from being remedied. What the Supreme Court stated with respect to state criminal defendants applies with equal force to federal criminal defendants: "the [cause and prejudice] rule will not prevent a federal habeas court from adjudicating for the first time the federal constitutional claim of a defendant who in the absence of such an adjudication will be the victim of a miscarriage of justice." *Wainwright v. Sykes, supra* 433 U.S. at 91, 97 S.Ct. at 2508.

To summarize, this court is of the opinion that recent decisions of the Supreme Court reveal a new attitude toward collateral review of both state and federal convictions. The court is further of the opinion that the *Fay* "deliberate bypass" standard is no longer applicable in both Section 2254 and Section 2255 cases where, as here, the waiver relates to events during trial such as waived objections or counsel's tactical decisions. The new standard to be applied in these types of cases is the "cause and prejudice" rule.

Nonetheless, petitioner argues that in light of the "complete judicial-procedure [sic] history leading to *Sykes,*" the "cause and prejudice" rule announced therein is not applicable to the case at bar. He notes that the procedural default in *Sykes* was predicated upon a state contemporaneous objection rule. He submits that Rule 12(b)(2) of the Federal Rules of Criminal Procedure does not bar him, since a pretrial motion could not possibly have been made in anticipation of the prosecutor's alleged comment during closing argument on his failure to testify. Rather, petitioner contends that Rule 51 of the Federal Rules of Criminal Procedure is applicable to the case *sub judice* and that it cannot bar his claims.

The court has already analyzed the cases prior to *Sykes* and has concluded that the "cause and prejudice" rule applies in Section 2255 cases involving waived objections and counsel's tactical decisions. Petitioner, of course, is correct that failure to object to the alleged comment pursuant to Fed.R. Crim.P. 12(b)(2) cannot bar his claim. It concerns pretrial motions, and the alleged constitutional error arose during trial.

Petitioner is correct that Fed.R.Crim.P. 51 is closely analogous to a state contemporaneous objection rule. Any suggestion, however, that an objection was not required—at least with respect to his Fifth Amendment claim—is misguided. Although Rule 51 abolishes exceptions, "it clearly negates the view that it is unnecessary for a party to make known to the court the action that he desires the court to take or his grounds for objection to action that

12. As the court stated in *Sykes* at 433 U.S. at 85, 97 S.Ct. at 2505, "[a]s applied to the federal petitions of state convicts, the *Davis* cause-and-prejudice standard was thus incorporated directly into the body of law governing the availability of federal habeas corpus review."

has already been taken." 3 Wright, Federal Practice and Procedure: Criminal § 842 at 342. Rule 51 requires the party to make "known to the court the action which he desires the court to take or his objection to the action of the court and the grounds therefor." Fed.R.Crim.P. 51. Failure to object at the proper time is equivalent to waiver of the objection. *See, e. g., United States v. Springer,* 460 F.2d 1344, 1354 (7th Cir.), *cert. denied,* 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1972).

In the case at bar, Ramsey concedes that his attorney did not make a timely and contemporaneous objection at trial with respect to his Fifth Amendment claim. It is well-settled that failure to object to the improper argument of a prosecutor constitutes a waiver of the objection. *United States v. Smith,* 335 F.2d 898 (7th Cir. 1964), *cert. denied,* 379 U.S. 989, 85 S.Ct. 700, 13 L.Ed.2d 609 (1965). Accordingly,

petitioner may pursue his Fifth Amendment claim here only if he can show cause for the failure to timely and contemporaneously object and actual prejudice resulting from the alleged constitutional violation.[13]

■ Petitioner has not shown cause for his attorney's failure to make a timely and contemporaneous objection at trial to the prosecutor's alleged comment and the trial judge's alleged failure to issue a precautionary instruction. His only explanation is his attorney's "inadvertence"[14] and inefficiency.[15] Such an explanation, however, does not constitute cause under *Sykes.* As Justice Brennan repeatedly noted in his dissenting opinion in *Sykes,* a lawyer's negligence, carelessness, and mistakes are now insulated from judicial review under the "cause and prejudice" test.[16] *Wainwright v. Sykes, supra,* 433 U.S. at 99–118, 97 S.Ct. 2497 (Brennan, J., dissenting). Likewise, even if this court were to characterize "in-

---

**13.** As noted earlier, the Supreme Court has already restricted the availability of collateral review in a Section 2255 case in *Davis v. United States, supra.* (Fed.R.Crim.P. 12(b)(2)—not *Fay* waiver concept—governs untimely grand jury discrimination claim in Section 2255 proceeding.) Prior to *Sykes,* it appeared that *Davis* required an *express* waiver provision in a statute or Rule. *See Davis v. United States, supra,* 411 U.S. at 239–40, 93 S.Ct. 1577. Although the waiver aspect of Rule 51 is well-established and although its terms clearly negate the view that objections are unnecessary, it does not explicitly or expressly provide that failure to object at trial constitutes waiver of the objection. For that matter, however, the Florida rule of criminal procedure at issue in *Sykes* did not explicitly or expressly provide that failure to object at trial constitutes waiver of the objection. Nevertheless, the Court gave great weight to the Florida authorities interpreting the rule as requiring a contemporaneous objection. *Wainwright v. Sykes, supra,* 433 U.S. at 85–86, 97 S.Ct. 2497. This court is of the opinion that the authorities interpreting Fed.R.Crim.P. 51 as requiring a contemporaneous objection are likewise entitled to great weight.

Other statements in *Sykes* support the conclusion that magic, express waiver language is not required to trigger application of the "cause and prejudice" rule first articulated in *Davis.* In its discussion of the trial as the "main event," the *Sykes* Court emphasized that "[a]ny *procedural rule* which encourages the

result that those proceedings [the criminal trial] be as free of error as possible is thoroughly desirable, and the contemporaneous-objection rule surely falls within this classification." *Wainwright v. Sykes, supra* at 90, 97 S.Ct. at 2508. (Emphasis supplied). This court is of the opinion that Fed.R.Crim.P. 51 likewise "falls within this classification." *Id.*

**14.** *See* Ramsey's answer to the court's June 13, 1977, order to produce.

**15.** *See* Ramsey's answer to the court's order of January 13, 1978.

**16.** This is not to say that petitioner was denied the right to the effective assistance of counsel. "[T]he Constitution guarantees a criminal defendant legal assistance which meets a minimum standard of professional representation." *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 641 (7th Cir.), *cert. denied sub nom. Sielaff v. Williams,* 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975). This standard was met in petitioner's case. In fact, a review of the record reveals that petitioner's counsel represented him ably both at trial and on appeal. In any event, even if petitioner's counsel in fact committed a grievous error by failing to object at trial, it does not necessarily mean that he failed to provide competent representation. *Wainwright v. Sykes, supra,* 433 U.S. at 105 n.6, 97 S.Ct. 2497 (Brennan, J., dissenting).

efficiency" as a gamble or "sandbagging," this would not constitute sufficient cause. *Id.* at 89, 97 S.Ct. 2497. In short, the Supreme Court has recognized that "a lawyer's decisions, at least on those subjects for which he bears the ultimate responsibility, will ordinarily be binding, even though important constitutional rights may be lost." [17] *Ennis v. LeFevre,* 560 F.2d 1072, 1075 (2d Cir. 1977), citing, *inter alia, Wainwright v. Sykes, supra,* and *Estelle v. Williams,* 425 U.S. 501, 512, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).

The new standard for collateral review requires a showing of both cause *and* prejudice. *Wainwright v. Sykes, supra; McDonald v. Estelle,* 564 F.2d 199, 200 (5th Cir. 1977). Because petitioner has failed to show cause for the failure to object at trial, this court need not consider whether he was actually prejudiced by the alleged constitutional violation.

■ Even assuming, however, that the court must make a finding with regard to prejudice, petitioner has failed to make a showing of actual prejudice. Petitioner merely argues that prejudice is inherent in any situation where a prosecutor comments on the failure of a defendant to testify at his criminal trial. Such an assumption,

however, does not constitute a sufficient showing of prejudice. In *Wainwright v. Sykes,* 528 F.2d 522 (5th Cir. 1976), *rev'd, Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Fifth Circuit found that prejudice is "inherent" in a situation where the admissibility of an incriminating statement is concerned. Although it did not give precise content to the term prejudice, the Supreme Court clearly rejected the "inherent prejudice" approach in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). This court must likewise reject petitioner's "inherent prejudice" approach. Moreover, even if the prosecutor did comment on Ramsey's failure to testify, the evidence of guilt presented at trial was substantial to a degree that would negate any possibility of actual prejudice resulting to Ramsey.[18] *Id.* at 91, 97 S.Ct. 2497.

### The Tampering Claim

As indicated earlier, in addition to his Fifth Amendment claim, Ramsey contends that the trial judge had the prosecutor's alleged comment physically stricken from the record, thus depriving him of an accurate transcript on appeal. Ramsey places great emphasis on this alleged misconduct

---

17. Clearly, it is the responsibility of counsel to make objections.

18. It should be noted that although the "deliberate bypass" standard of *Fay* was originally applied in the context of an appeal, *Fay v. Noia, supra,* courts have applied the standard to procedural defaults and tactical decisions made both at trial and on appeal. *See, e. g., Howard v. Daggett,* 526 F.2d 1388 (9th Cir. 1975) (appeal); *United States ex rel. Terry v. Henderson,* 462 F.2d 1125 (2d Cir. 1972) (trial). In a Memorandum and Order dated April 11, 1977, this court found, *inter alia,* that Ramsey could pursue his Fifth Amendment claim via a Section 2255 motion even though he had not raised it on appeal. The court applied the rule derived from *Fay* and *Davis* that one is not barred from collateral relief unless he knowingly waived his right to raise the constitutional issue on direct review for tactical or other reasons, absent a provision for waiver in a statute or rule. In light of *Sykes,* this rule is no longer controlling. Because *Sykes* changes the standard for collateral review of procedural de-

faults and tactical decisions at trial, it is logical that it should change the standard for collateral review of procedural defaults and tactical decisions made on direct appeal, such as the failure to raise an issue on direct appeal. *See, e. g., Ennis v. LeFevre, supra* at 1075. Such an approach is consistent with the Supreme Court's retreat from *Fay,* and it reinforces the integrity of the entire criminal process by requiring constitutional issues to be raised at the proper time.

In a case such as this, there would ordinarily be no need to consider whether there was *cause and prejudice* for the failure to raise the Fifth Amendment claim on direct appeal, in light of petitioner's failure to show cause and prejudice for the failure to timely object at trial to the alleged constitutional violation. As will be seen, however, the court must reach the issue in light of petitioner's tampering allegations and his arguments with respect to Rule 52(b), Fed.R.Crim.P.

in arguing that he should be able to seek collateral review of his Fifth Amendment claim. Ramsey submits that counsel's failure to object to the prosecutor's comment is irrelevant in light of the trial judge's tampering with the record. He contends that with the complete record before it, the Court of Appeals, pursuant to Rule 52(b), Fed.R.Crim.P., would have noticed the prosecutor's comment on his failure to testify even though it was not brought to its attention.[19] As Ramsey states, the point is that but for the trial judge's tampering with the record his Fifth Amendment claim would have been preserved on appeal under Rule 52(b), notwithstanding his attorney's failure to object at trial.

■ Petitioner's argument, while clever, cannot withstand scrutiny. Even assuming that the prosecutor commented on his failure to testify, that the trial judge physically tampered with the record with respect thereto, and that an objection at trial would have been futile, he still has failed to show cause for his failure to raise his claims on direct appeal and actual prejudice resulting from the alleged constitutional violation as required by *Sykes*. *See also* note 18, *supra*.

Ramsey merely asserts that he "so bid that his attorney enter his claim [on appeal] but cannot speak of why he did not." This assertion, however, is totally unsupported and does not constitute sufficient cause. As stated in *Ennis v. LeFevre, supra* at 1075, "[w]hile all would agree that the decision whether to take an appeal from a criminal conviction is a critical one committed ultimately to the defendant himself, decisions concerning which legal issues will be urged on appeal are uniquely within the lawyer's skill and competence, and their resolution is ultimately left to his judgment." Ramsey's attorney appealed his conviction on grounds other than those

urged here, *see* discussion *ante* at pp. 1266–1267 and he is therefore bound by his attorney's decision not to press the Fifth Amendment claim or the tampering claim on appeal. *Ennis v. LeFevre, supra* at 1075. In short, the time and place to raise the Fifth Amendment and tampering claims was on direct appeal; not years later via a Section 2255 motion and well after the death of the trial judge.[20]

■ Because of his failure to show cause for the failure to directly appeal his claims, the court need not consider whether petitioner was actually prejudiced by the alleged constitutional violations. Even assuming, however, that the court must make a prejudice finding, as indicated earlier, Ramsey has failed to make a showing of actual prejudice. Moreover, Ramsey's suggestion that the Court of Appeals would have *sua sponte* addressed the prosecutor's comment had there been a complete record, even if correct, is unpersuasive. First, comment by a prosecutor on a defendant's failure to testify does not require automatic reversal. 3 Wright, Federal Practice and Procedure: Criminal § 855. Second, this court has concluded that such comment was harmless beyond a reasonable doubt and that the evidence of guilt presented at trial was substantial to a degree that would negate any possibility of actual prejudice resulting to Ramsey.

In sum, petitioner is precluded from pursuing any of his constitutional claims here in light of *Wainwright v. Sykes, supra,* and his failure to raise his constitutional claims at trial and on direct appeal.

## ALTERNATIVE GROUNDS FOR DISMISSAL

Even assuming that petitioner is not precluded by *Wainwright v. Sykes, supra,* from pursuing his constitutional claims, this

---

19. In connection with his Rule 52(b) argument, Ramsey, although conceding that his attorney did not object, asserts—for the first time—that his attorney moved for a mistrial. He contends that the trial judge denied the motion and ordered the record stricken. In the alternative, he contends that even if counsel had said nothing, had the trial record been preserved, "[p]e-

titioner could have argued that a substantive violations [sic] of his Constitutional Rights could be raised on collateral attack in view of Rule 52(b)."

20. Judge McLaren died on or about February 25, 1976.

court must dismiss his amended Section 2255 motion since it is clearly frivolous. As discussed hereinafter, this determination is not made pursuant to the Federal Rules of Civil Procedure or a statute. Rather, it is based upon this court's broad, inherent power. 1 Moore's Federal Practice, ¶ 0.60[6] at 633–37.

Rule 12 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides that a district court may apply the Federal Rules of Civil Procedure in Section 2255 cases if it is appropriate. Notwithstanding their applicability, the Federal Rules of Civil Procedure may be inadequate, as here, to deal with a frivolous case. Under such circumstances, courts may and have exercised their power to dismiss an action as frivolous.

Although the case involved dismissal of a civil rights action for damages pursuant to the frivolous standard of 28 U.S.C. § 1915(d), Chief Judge Smith's comments in *Jones v. Bales,* 58 F.R.D. 453, 463–64 (N.D. Ga.1972), *aff'd per curiam,* 480 F.2d 805 (5th Cir. 1973), are relevant here:

> There are compelling reasons for allowing courts broader dismissal powers in forma pauperis suits—especially damage suits brought by convicted prisoners—than in other cases. Persons proceeding in forma pauperis are immune from imposition of costs if they are unsuccessful; and because of their poverty, they are practically immune from later tort actions for "malicious prosecution" or abuse of process. *Thus, indigents, unlike other litigants, approach the courts in a context where they have nothing to lose and everything to gain. The temptation to file complaints that contain facts which cannot be proved is obviously stronger in such a situation. For convicted prisoners with much idle time and free paper, ink, law books, and mailing privileges the temptation is especially strong. As Justice Rehnquist has noted, "Though [an inmate] may be denied legal relief, he will nonetheless have obtained a short sabbatical in the nearest federal courthouse." Cruz v. Beto,* 405 U.S. 319, 327,

92 S.Ct. 1079, 1084, 31 L.Ed.2d 263 (1972) (dissenting).

The Federal Rules of Civil Procedure are inadequate to protect the courts and defendants—who it should be remembered pay for their defense—from frivolous litigation from indigent prisoners. The Rules are liberal; they are designed so that most cases will actually go to trial if the parties so desire. Under current standards, Rule 12 motions to dismiss are rarely properly granted. [citations and footnote omitted]. The liberal approach of the Rules is probably desirable, but the rules contemplate litigants who are limited by the realities of time and expense. *They also contemplate litigants with a basic respect for accuracy. As Judge Duniway has written, "[w]e know from sad experience with habeas corpus and 2255 cases that imprisoned felons are seldom, if ever, deterred by the penalties of perjury. They do not hesitate to allege whatever they think is required in order to get themselves even the temporary relief of a proceeding in court." Weller v. Dickson,* 314 F.2d 598, 602 (9th Cir. 1963) (concurring opinion). *A reasonably intelligent prisoner with a willingness to misrepresent facts can often avoid both 12b dismissal and summary judgment, although he actually has no chance of eventual success in his suit.* Even if summary judgment can be won by a defendant, much expense may already have been suffered by him in retaining counsel to conduct the defense.

*It is plain to this Court that courts need an extra measure of authority* when faced with actions proceeding in forma pauperis—*particularly where the action is brought by a prisoner* seeking damages. And it is this court's conclusion that Congress has granted that extra authority by enacting 28 U.S.C. § 1915(d). In light of 1915(d)'s general purpose, the specific term "frivolous" refers to an action in which the plaintiff's realistic chances of ultimate success are slight. [citations omitted.] *This is not to say that suits should not be allowed filed or be dismissed abruptly or that a court should readily assume frivolity because it is pris-*

*oner filed. To the contrary, it is incumbent upon the court to develop the case and to sift the claims and known facts thoroughly until completely satisfied either of its merits or lack of same.* In the former instance, the case should proceed with the assistance of the court. However, upon reasonable effort where the contrary appears, it should be dismissed. Here, the Court has endeavored to apply this leavening process and what has surfaced is found wanting. [Emphasis supplied].

The preceding language illustrates the dilemma of the federal courts in weeding out frivolous prisoner litigation, whether such litigation be civil rights cases or actions by state or federal prisoners seeking collateral review of their convictions. *See also Lovell v. Arnold,* 391 F.Supp. 1047 (M.D.Pa.1975) [state inmate's in forma pauperis habeas corpus petition dismissed as frivolous pursuant to 28 U.S.C. § 1915(d)]. Although Chief Judge Smith and other judges have found 28 U.S.C. § 1915(d) to be an effective filter for disposing of frivolous in forma pauperis litigation, in the case at bar, petitioner did not seek leave to proceed in forma pauperis.[21] Accordingly, Section 1915(d) cannot apply here.

There is, however, well-established authority that this court has broad, inherent power to *sua sponte* dismiss an action, or part of an action, which is frivolous, sham, vexatious, or brought in bad faith. 1 Moore's Federal Practice ¶ 0.60[6] at 635–36. *See also Brown v. District Unemployment Compensation Bd.,* 411 F.Supp. 1001 (D.D.C.1975) (district court has inherent power to control the judicial process and dismiss frivolous or harassing action *sua sponte* ). This broad, inherent power does not depend on statute, and it is not limited or impaired by Rule 12(b). 1 Moore's, *supra* at 635–36. The power "may be invoked at any time during the progress of the action." *Id.* at 636. In addition, where an action is dismissed *sua sponte* as being frivolous, notice of the proposed dismissal and an opportunity to respond thereto is not required. *See, e. g., Harkins v. Eldredge,* 505 F.2d 802, 804 (6th Cir. 1974). *See also Brown v. District Unemployment Compensation Bd., supra* at 1002, where, upon reading the complaint, the district judge *sua sponte* ordered "immediate dismissal."

The mere fact that this is a Section 2255 proceeding should not eclipse the court's broad, inherent power. Of course, this is not to say that prisoners should be prohibited from filing Section 2255 motions or that such motions should be assumed to be frivolous and therefore dismissed.[22] As Chief Judge Smith has stated, "[t]o the contrary, it is incumbent upon the court to develop the case and to sift the claims and known facts thoroughly until completely satisfied either of its merits or lack of same." *Jones v. Bales, supra* at 464. Mindful of these guidelines and having considered all that is involved in this case, the court, for the reasons hereinafter stated, finds that petitioner's amended Section 2255 motion is frivolous and that it should be dismissed.

*Credulity*

 In determining whether Ramsey's amended Section 2255 motion is frivolous,

---

21. Petitioner paid a $5.00 filing fee.

22. A number of judges and commentators, however, have expressed alarm that the federal courts are being flooded by a bath of utterly meritless applications for collateral relief from both state and federal prisoners. Chief Justice Burger, in a statement issued on January 3, 1976, said: "Fully a sixth of the 117,000 cases of the civil docket of federal courts (19,000) are petitions from prisoners, most of which could be handled effectively and fairly within the prison systems." 62 A.B.A.J. 189, 190 (Feb. 1976). Professor Wright has commented upon the flood of largely meritless applications. 2 Wright, Federal Practice and Procedure: Criminal § 589 at 579–80 & n.26. Recently, he stated:

> Applications for habeas corpus or for other relief from prisoners, state and federal, now constitute the largest element of the civil caseload in the district courts.
>
> The great bulk of these applications are utterly unjustified, and it is easy to say, as Justice Jackson did, that "he who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search." [footnote omitted]. Wright, Law of Federal Courts, § 53 at 246 (1976).

this court may assess the credibility of the allegations. *Jones v. Bales, supra* at 465; *Daves v. Scranton,* 66 F.R.D. 5, 7 (E.D.Pa. 1975). In light of all the circumstances, the court concludes that the motion must be dismissed because it "simply strain[s] credulity." *Jones v. Bales, supra* at 465.

One factor undermining the credibility of petitioner's allegations is the belated manner in which they are presented. As already indicated, the record clearly shows that petitioner was represented by the same able attorney—Sam Adam—at both of his trials and on appeal. The record reveals that at both trials, Ramsey's attorney examined witnesses skillfully, presented well-reasoned arguments, and objected numerous times on his behalf. Counsel's skill is illustrated by the inability of the jury at Ramsey's first trial to reach a verdict.

Ramsey concedes that his attorney did not object to the prosecutor's alleged remark on his failure to testify. The transcripts from both his trials do not reveal any such comment, and surely if such comment had been made counsel would have objected. Moreover, although his attorney pressed three sophisticated grounds on appeal, *ante* at pp. 1266–1267, none of the grounds urged concerned a claim that the prosecutor commented upon Ramsey's failure to testify or that the trial judge physically removed such comment from the record. Surely, if these violations occurred counsel would have vigorously pressed them on direct appeal. That such claims were not urged on appeal casts grave doubt on Ramsey's allegations that the prosecutor commented on his failure to testify and that the trial judge tampered with the record.

As indicated earlier, Ramsey filed his original Section 2255 motion some three and one-half years after his conviction and over a year after his petition for certiorari was denied. Surely, if Ramsey's constitutional rights were so clearly violated by the prosecutor's comment and the judge's tampering with the record, Ramsey would have sought relief with far greater alacrity. That he waited for so long also casts doubt on the credibility of his allegations.

In addition to the foregoing, another factor undermining the credibility of Ramsey's allegations is the glaring inconsistencies which appear in the papers Ramsey has filed and his proclivity to alter his version of what happened. Initially, Ramsey contended that the prosecutor commented upon his failure to testify during closing argument. The government denied that any such comment was made and in support of its motion for summary judgment filed a transcript of the closing arguments from Ramsey's first trial. The arguments contained no such comment.

Ramsey's response to the motion was, at the very least, odd. He did not suggest or argue that the government had filed the summations from the wrong trial—the one which resulted in a deadlocked jury and a mistrial. He failed even to make the argument consistent with his theory of the case, i. e., that of course the government's transcript of the closing arguments does not contain the prosecutor's remark: the trial judge physically removed it from the record. Rather, faced with the government's transcript of the closing arguments which contained no prejudicial comment, Ramsey changed his mind as to when the alleged comment was made. He simply denied the accuracy of the government's transcript and filed one page of the transcript from his first trial, indicating in his own handwriting that the prosecutor's comment was made just before, as opposed to during, closing argument. The page he filed did not contain the alleged comment. Although Ramsey changed his mind as to when the alleged comment was made, he offered no explanation for its new location.

When this court denied the government's motion for summary judgment, it indicated that the pages of the transcript which the parties filed were irrelevant since they were from petitioner's first trial, which was declared a mistrial, and not from his second trial, at which he was convicted. Ramsey, however, has not made a distinction between the two trials, and he has not retreated from his position that the comment

was made at his first trial. In addition, he has again changed his mind as to what transpired at trial. Ramsey again states that the prosecutor's comment was made during closing argument. Moreover, he contends, for the first time, that upon hearing the prosecutor's remark his attorney unsuccessfully moved for a mistrial. With respect to this latter contention, the court notes that Ramsey was represented by the same attorney at trial and on appeal. That counsel moved for a mistrial because the prosecutor commented upon Ramsey's failure to testify but did not raise the matter on appeal is incredible. The irresistible conclusion is that counsel never moved for a mistrial on the grounds that the prosecutor commented upon Ramsey's failure to testify, because no such comment was made.

Coupled with Ramsey's vacillation as to what transpired at trial is his utter failure to substantiate his allegations, especially those casting aspersion upon the trial judge. Under its broad, inherent power, this court could have long since dismissed the tampering allegations as frivolous, malicious and vexatious.[23] The court, however, has made every effort to do substantial justice. Under the circumstances it cannot lean over backwards and be a contortionist and sustain petitioner's conclusory allegations.

Petitioner has had numerous opportunities to present both the government and the court with even a scintilla of evidence to support his tampering allegations. He has failed to do so. For example, petitioner did not even file a responsive answer to this court's order of June 13, 1977, to produce portions of the transcript and all documents which support his contention that the trial judge removed certain statements from the record. In addition, in response to the government's motion for summary judgment, he did not file a counter-affidavit from his attorney, or anyone else at trial, which stated that the trial judge physically removed, or had someone else remove, statements from the record. All that Ramsey has done is to inundate this court with his own conclusory allegations.

In short, if the prosecution actually commented upon his failure to testify and if the trial judge actually tampered with the record, surely Ramsey would know at which trial these events occurred, would know when during the trial they happened, and would be eager to furnish the court with as much evidence as possible to support claims that have never been passed on by a court. On the contrary, Ramsey makes no distinction between his two trials, has chronically changed his version of what happened at trial, and when asked to support his allegations fails to do so.

The inevitable conclusion is that Ramsey is attempting to bootstrap his way into, at the very least, an evidentiary hearing. Having been represented by able counsel, having been convicted at trial, and having failed to win on appeal, Ramsey has cleverly, but insidiously, attempted to press constitutional claims which have heretofore not been raised. He claims that the prosecutor commented upon his failure to testify and in the same breath that the late Judge McLaren physically removed such comment from the record. What better way to get a second bite at the proverbial apple, what better way to raise a Fifth Amendment violation that never occurred, and what better way to insure an evidentiary hearing than to contend that the record is incomplete because the trial judge tampered with it? As Judge Duniway has stated,

> [w]e know from sad experience with habeas corpus and 2255 cases that imprisoned felons are seldom, if ever, deterred by the penalties of perjury. They do not

23. That Judge McLaren would have tampered with the record is not only patently absurd but also a libelous accusation. After a distinguished career as Assistant Attorney General in charge of the Antitrust Division of the U. S. Department of Justice, Richard W. McLaren was appointed to the federal bench on January 26, 1972. Judge McLaren served ably and conscientiously, and he was one of the most respected judges in the Northern District of Illinois. His reputation for honor and integrity was above reproach. The court has absolutely no doubts that the posthumous attack on Judge McLaren's honor and integrity is utterly meritless and a figment of petitioner's imagination.

hesitate to allege whatever they think is required in order to get themselves even the temporary relief of a proceeding in court. *Weller v. Dickson,* 314 F.2d 598, 602 (9th Cir.) (concurring opinion), *cert. denied,* 375 U.S. 845, 84 S.Ct. 97, 11 L.Ed.2d 72 (1963).

In sum, this court has no hesitation in finding that the allegations of petitioner's amended Section 2255 motion clearly strain credulity and that the motion should be dismissed as frivolous, vexatious, and sham.

### *Irrelevance*

■ Even if this court believed Ramsey's allegations, the court would nevertheless dismiss his amended Section 2255 motion as frivolous as a matter of law. Ramsey has not retreated from his position that the prosecutor's comment on his failure to testify was made at his first trial. Because the first trial was declared a mistrial and because Ramsey was convicted at the second trial, such comment, even if made, in no way brought about his conviction, and such comment is clearly irrelevant to his amended Section 2255 motion seeking to overturn that conviction. Likewise, even if the trial judge tampered with the transcript of Ramsey's first trial, such tampering is irrelevant to his amended Section 2255 motion. Accordingly, petitioner's claims are frivolous as a matter of law and must be dismissed.[24]

### THE RULE 35 MOTION

■ Petitioner has filed a motion pursuant to Fed.R.Crim.P. 35 requesting that this court modify his sentence. He concedes that the motion is untimely but contends that there are extenuating circumstances. The 120-day period of Rule 35, however, is jurisdictional and not a matter for the court's discretion. *See, e. g., United States v. Robinson,* 457 F.2d 1319 (3d Cir. 1972); *United States v. Hunter,* 162 F.2d 644 (7th Cir. 1947). The court is therefore unable to entertain petitioner's Rule 35 motion and it must be dismissed.

### CONCLUSION

For the reasons stated, it is therefore ordered that petitioner's amended Section 2255 motion shall be, and the same is hereby, dismissed.

It is further ordered that petitioner's Rule 35 motion shall be, and the same is hereby denied, and said motion is dismissed.

It is further ordered that the clerk prepare the appropriate form of judgment.

It is further ordered that the clerk send copies of this Memorandum and Order to the parties forthwith.

---

**24.** The court's examination of the transcript of petitioner's second trial does not reveal any comment by the prosecution on petitioner's failure to testify. While the trial judge gave the standard cautionary instruction that the jury is not to draw any adverse inferences from the defendant's decision not to take the stand in his own behalf, such an instruction clearly does not violate the Fifth Amendment's prohibition against compelled self-incrimination. *Lakeside v. State of Oregon,* —— U.S. ——, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978).