**Mr. Tyrone X. SAVAGE, Appellant,**

v.

**UNITED STATES of America.**

**No. 75–2444.**

United States Court of Appeals, Third Circuit.

Argued Sept. 9, 1976.

Decided Dec. 29, 1976.

Certiorari Denied April 4, 1977. See 97 S.Ct. 1608.

---

Marc J. Sonnenfeld, Philadelphia, Pa., for appellant; Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel.

Robert E. J. Curran, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief, App. Div., Robert S. Forster, Jr., Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before VAN DUSEN, HUNTER and WEIS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This is an appeal from an April 15, 1975, district court order, denying a motion of a convicted defendant, pursuant to 28 U.S.C. § 2255, to vacate and set aside a judgment and commitment after a jury verdict of guilty of bank robbery, in violation of 18 U.S.C. § 2113. On direct appeal of defendant's conviction, this court had affirmed the district court judgment in *United States v. Savage*, 470 F.2d 948 (3d Cir. 1972),[1] *cert. denied*, 412 U.S. 930, 93 S.Ct. 2759, 37 L.Ed.2d 158 (1973).

Initially, Savage's petition for relief under 28 U.S.C. § 2255 had named "Hon. John B. Hannum" as respondent, and the district court denied the application to proceed in forma pauperis in September 1974. However, the United States was substituted as respondent by a November 8, 1974, district court order, filed on November 11 and subsequently served on the United States.[2]

1. The facts are set forth in this opinion, where the court said, *inter alia*, "we are of the opinion that the evidence is so strong as to demonstrate defendant's guilt beyond any reasonable doubt." See also *United States v. Savage*, 331 F.Supp. 177 (E.D.Pa.1971).

2. There is nothing in the record to controvert the affidavit of Savage "that he is a pauper by law, within the meaning of *Akins* [sic] *v. DuPont*, 355 [sic] U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43 (1948), unable to pay the costs for protecting his cause of action" (see 335 U.S. at 339–340, 69 S.Ct. 85). A petition for rehearing was filed by Savage on October 1, 1974, based on the merits of his claim, and the district court treated this as incorporating the initial petition of Savage under 28 U.S.C. § 2255 by a November 8, 1974, order reading as follows:

"Presently before the Court is the petition of Tyrone X. Savage for reconsideration of this Court's Order of September 10, 1974, wherein petitioner's motion to vacate sentence pursuant to 28 U.S.C. § 2255 was denied.

The record makes clear that although the final April 15, 1975 district court order denied the petition for reconsideration, the district court had considered the petition for relief under 28 U.S.C. § 2255 on the merits, thereby treating the application to proceed in forma pauperis in the district court as if it had been granted. Neither party objected in this court to treatment of the application to proceed in forma pauperis in the district court as if it had been granted.

A panel of this court, on November 4, 1975,[3] granted a motion filed by petitioner for leave to proceed in forma pauperis in this court and directed that counsel be appointed for Savage pursuant to 18 U.S.C. § 3006A(g).

After careful consideration of Savage's contentions, we have concluded that the

> "*And Now*, this 8th day of November, 1974, it is hereby Ordered that:
> "(1) The United States Government shall be substituted as party respondent.
> "(2) The Clerk of the Court shall forward copies of the petition to the Untied States Marshal to be served upon the United States Attorney and on Julius E. Fioravanti, Esquire, defense counsel.
> "(3) The United States Attorney shall answer the petition for reconsideration within sixty (60) days of service."

F.R.Civ.P. 4(d)(4) makes clear that this action against the United States under 28 U.S.C. § 2255 commenced in November 1974 as the result of the above order and its service on the United States. After a response had been filed by the Government on the merits, alleging, *inter alia*,

> "It is respectfully averred that the issues raised by the petitioner can be decided without a hearing based on an examination of the files and records pertaining to the original prosecution."

and a traverse to this response had been filed by Savage, the district court filed a Memorandum and Order on April 15, 1975, reciting the history of the litigation, stating that "the petition for reconsideration is postured for adjudication" and concluding:

> "In his current petition, defendant contends that his defense counsel requested the Court to inquire as to possible racial prejudice of the prospective panel during the voir dire examination and that the Court denied the request. Defendant contends that this denial requires reversal of his conviction. *United State v. Robinson*, 485 F.2d 1157 (3d Cir. 1973).

April 15, 1975, district court order should be modified to provide that the motion to vacate sentence, rather than the application to proceed in forma pauperis, is "denied" and, as so modified, that order should be affirmed.

## I. ALLEGED DENIAL OF CONSTITUTIONAL AND STATUTORY RIGHT TO TRIAL BY JURY DUE TO AN IMPROPER JURY SELECTION SYSTEM.

Savage contends, in accordance with the following paragraph of his petition, that the selection of jurors' names for the qualified jury wheel, as provided in the September 23, 1968, order of the United States District Court for the Eastern District of Pennsylvania, approved by the Reviewing Panel, in accordance with 28 U.S.C. § 1863,[4] denied

> "An examination of the transcript in conjunction with the list of voir dire questions submitted to the Court by defense counsel, Julius Fioravanti, Esquire, shows that no such request was made. The record reflects that defense counsel submitted to the Court a paper with a typed list of numbered questions for purposes of voir dire, and then requested by number those questions he wanted asked of the prospective panel. At the bottom of this typed list was a single unnumbered, handwritten question: 'Would the fact that defendant is Black affect your ability to render a just and fair verdict in this case.' The transcript makes it clear beyond doubt that the unnumbered, handwritten question was not requested. (Transcript pages 158–160). The Court had no duty to ask a question of which it had no knowledge.
> "For the foregoing reasons, the defendant's petition will be denied."

This Memorandum makes clear that the court did in fact review the merits and treated the application to proceed in the district court in forma pauperis as granted. In denying the October 1 petition for reconsideration (rehearing), the district court denied the petition to vacate the sentence under 28 U.S.C. § 2255, which was incorporated by reference in the October 1 petition for rehearing.

3. This order was filed at our Misc. No. 75–8150, and the appeal was thereupon docketed at our No. 75–2444, as shown in the caption.

4. The Eastern District of Pennsylvania plan, as approved in September 1968, provides in paragraph 13 that "the provisions of 28 U.S.C. §§ 1861 to 1874, as amended, and all amend-

him his constitutional and statutory right to trial by jury (5a):

"Petitioner attacks the Petit Jury ensemble because members of the Black race, of which he is a member, were improperly excluded from the list of prospective jurors and from the jury itself, thus depriving him of his Constitutional Rights. The Petit Jury list contained 195 names of whom 11 were Black, or approximately 6%. The panel as selected by the clerk contained 32 names, 4 of whom were Black. It is submitted that the Petit Jury list for the U.S. Eastern District Court embodies the eastern part of the State of Pennsylvania, and the prospective jurors come from that general area without any emphasis on a specific area. However, where as here, the Petitioner is Black; from the City of Philadelphia; the bank is located in the City of Philadelphia; it is respectfully submitted that the Petit Jury list should and must draw a larger percentage of prospective jurors from the City of Philadelphia and its Black population so as to give Petitioner a more representative background of his peers to judge him."

On the basis of the petitioner's allegations, 12½% (4 of 32) of the panel from which the jury was selected were members of "the Black race." As pointed out in *United States v. Lewis*, 472 F.2d 252, 255 (3d Cir. 1973):

"The defendant had the right to a jury 'selected at random from a fair cross section of the community.' However, he had no right to be tried by a particular jury which was itself 'a fair cross section of the community'; nor did he have a right to a jury selected at random from the *fairest* cross section of the community. Thus, the defendant must establish that the voter registration lists from which the selection of his jury was made did not represent 'a fair cross section of the community.'" (Emphasis in original; footnote omitted.)

Savage, as the defendant in *Lewis*, suggests that other sources of names than those provided by the voter registration list would secure a fairer cross-section of the county in the district where he committed the crime (see pages 17 ff. of petitioner's brief, relying on data collected by "a professional statistician" after November 4, 1975).[5] He seeks an evidentiary hearing "to raise and discuss" apparently the applicable figures for 1970, even though he concedes that the data which he cites "refer to the master and qualified jury wheels in use in 1975."[6] It is contended that:

"[F]urther study of the figures may show that not only was there a general under-representation of young people in the jury pool, but that in particular there was a substantial under-representation of young black persons in the jury pool, and that young black persons constitute a 'cognizable group' for purposes of petitioner's constitutional and statutory rights as discussed herein."[7]

■ Based on the holding in *Lewis, supra* at 255, we have concluded that petitioner

ments of said sections which may hereafter be made" are incorporated in the plan by reference. 28 U.S.C. §§ 1861 and 1862 contained, *inter alia*, this wording in 1970:

"§ 1861. Declaration of policy
"It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes. . .

"§ 1862. Discrimination prohibited
"No citizen shall be excluded from service as a grand or petit juror in the district courts of the United States on account of race, color, religion, sex, national origin, or economic status."

5. Petitioner's brief concedes at page 19:
"[N]on-white persons accounted for 14.6% of those actually approved for jury service. Thus, the percentage of non-whites actually approved for jury service according to these statistics was slightly in excess of the percentage of non-white in the 1970 census population."
See page 22 of petitioner's brief.

6. See also page 22 of above brief.

7. See page 23 of above brief.

has failed to sustain his burden on this issue.[8] See also *Smith v. United States*, 456 F.2d 121, 122 (3d Cir. 1972); *Evans v. United States*, 435 F.2d 708 (3d Cir.), *cert. denied*, 401 U.S. 1014, 91 S.Ct. 1263, 28 L.Ed.2d 551 (1970). We find no violation of petitioner's constitutional or statutory rights in the Jury Selection Plan of the United States District Court for the Eastern District of Pennsylvania as it operated in this case in 1970.

## II. ALLEGED DENIAL OF A REQUEST OF PETITIONER'S COUNSEL TO INQUIRE DURING THE VOIR DIRE EXAMINATION AS TO POSSIBLE RACIAL PREJUDICE OF THE PROSPECTIVE JURY PANEL.

The record in this case discloses that after the jury panel had been questioned by the trial judge, he asked counsel "if there are any other questions that either of you might have" (N.T. 158 of Document 37 in E.D.Pa. Crim. No. 70–162, proceedings on 10/9/70). The counsel for defendant had furnished to the trial judge a two-page typed list of suggested questions numbered from 1 to 18, with the following question written in longhand on page 2 after question 18:

"Would the fact that the defendant is black affect your ability to reach a just and fair verdict in this case?"

Counsel for defendant responded to the court's question by requesting that the panel be asked questions Nos. 5, 10, 12–14, 16 and 17 from the typed list. The trial judge denied all the requests except for No. 17, and one potential juror was excused after this question was read to the jury (N.T. 162). Court then recessed for lunch. After lunch counsel exercised their challenges (N.T. 169–172), the jury was sworn (N.T.

172), and the trial judge gave the jury certain preliminary instructions (N.T. 172–79).

■ There was no request at any time on the record that the trial judge ask the jury the handwritten question appearing on defense counsel's list of potential questions for jurors. No affidavit has been filed by trial counsel that the court was requested to ask the jury this question, even though such counsel made available to the prosecutor prior to January 10, 1975, the list of 18 typed questions and one handwritten question referred to above, in addition to signing a sworn statement (62a) that this list was the document he used at trial to the best of his recollection. See Document 6 in *Savage v. United States*, Civil No. 74–2217 (E.D.Pa.).[9]

Under these circumstances, the court rejects the contention of the present counsel for petitioner that "the essential demands of fairness and the exercise of the supervisory power of the Supreme Court and of this Court require that an evidentiary hearing be held on the allegation that the district judge improperly denied the request of petitioner's court-appointed trial counsel to inquire as to possible racial prejudice of the prospective jury panel during the voir dire examination" (page 1 of petitioner's Supplemental Brief). Able counsel for petitioner has not been able to call our attention to any case where it has been held that a hearing should be required more than three years after the exhaustion of all direct appeals, without any showing that such a request was made to the trial judge prior to or during the trial. It has been consistently recognized that, although it is reversible error for a trial judge to refuse a request to interrogate jurors as to possible racial prej-

---

8. Insofar as petitioner contends that the petit jury list should contain a larger percentage of prospective jurors from Philadelphia and its black population, so as to give him a more representative background of his peers to judge him (see note 5, page 26, of above brief), we reject such contention. See *Zicarelli v. Gray*, 543 F.2d 466 at 481–482, (3d Cir., 1976). See *United States v. Test*, 550 F.2d 577 at 586, 590 (10th Cir., 1976).

9. Petitioner makes no attempt to explain why trial counsel did not include in such statement an assertion that the trial judge was requested to ask the jurors the handwritten question or a similar question if this was a fact. See second paragraph of quotation from the April 15, 1975, district court memorandum appearing in note 2.

udice, where counsel remains silent when he has the opportunity to make such a request, an objection to the failure to ask the jury a question concerning possible racial prejudice made after the jury trial is too late. See *United States v. Leftwich*, 461 F.2d 586, 589 (3d Cir. 1972).[10] In *Ristaino v. Ross*, 424 U.S. 589, 597, 96 S.Ct. 1017, 1022, 47 L.Ed.2d 258 at note 9 (1976), relied on by petitioner, the Court made clear that such questions should be asked "if requested by defendant," using this language:

> "Although we hold that *voir dire* questioning directed to racial prejudice was not constitutionally required, the wiser course generally is to propound appropriate questions designed to identify racial prejudice *if requested* by the defendant." (Emphasis supplied.)

As noted above, no request for questioning the jurors on this subject was made until this action was commenced in August 1974, more than three years after the trial.

For the foregoing reasons, the district court's April 15, 1975, order will be modified[11] to read:

> "And Now, this 15th day of April, 1975, Tyrone X. Savage is permitted to proceed in forma pauperis nunc pro tunc as of November 8, 1974, and his application to vacate sentence pursuant to 28 U.S.C. § 2255 is denied."

and, as so modified, the district court order of April 15, 1975, will be affirmed.

---

**10.** But see *United States v. Robinson*, 485 F.2d 1157, 1160 (3d Cir. 1973), where the request was made during the jury selection process.

**11.** See 28 U.S.C. § 2106.