Charles N. NORRIS,
Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 79–1673.

United States Court of Appeals,
Seventh Circuit.

Submitted March 25, 1982.

Decided Aug. 13, 1982.*

---

* Because of an arguable conflict with a previous decision of this court, *Guzzardo v. Bengston*, 643 F.2d 1300, 1304 (7th Cir. 1981), this opinion has been circulated among all the judges of the court in regular active service, pursuant to Circuit Rule 16(e). A majority did not favor hearing the case en banc. Judges Bauer, Wood, and Cudahy voted to hear it en banc.

Charles N. Norris, pro se.

Daniel Webb, U. S. Atty., Chicago, Ill., for respondent-appellee.

Before CUMMINGS, Chief Judge, and CUDAHY and POSNER, Circuit Judges.

POSNER, Circuit Judge.

The appellant was convicted in 1976 of transporting and conspiring to transport forged or altered securities in interstate commerce, a federal crime. He appealed his conviction to this court, which in 1978 affirmed the conviction in an unpublished order *sub nom. United States v. Greathouse*, 571 F.2d 586 (7th Cir. 1978). The appellant then moved the sentencing court under 28 U.S.C. § 2255 to vacate his conviction, the court denied his motion, and this appeal followed.

■ The appellant's section 2255 motion raised seven issues. Three of these had been presented in the appellant's direct appeal from his conviction and decided by this court against him. No changed circumstances of fact or law are alleged that might make it possible to regard them as new grounds. In the absence of changed circumstances we will not reconsider in an appeal from the denial of a section 2255 motion an issue previously decided by us on direct appeal from the conviction. See *Levine v. United States*, 430 F.2d 641, 642–43 (7th Cir. 1970); cf. *United States v. Scherer*, 673 F.2d 176, 180 (7th Cir. 1982); *United States v. Orejuela*, 639 F.2d 1055, 1057 (7th Cir. 1981).

■ Another issue raised in the appellant's section 2255 motion—that one of the witnesses who testified against the appellant at his trial was not credible—could not properly be raised in a section 2255 motion because it could have been, but was not, raised on direct appeal. See *Sunal v. Large*, 332 U.S. 174, 178–79, 67 S.Ct. 1588, 1590–91, 91 L.Ed. 1982 (1947). It is true that *Kaufman v. United States*, 394 U.S. 217, 220, 89 S.Ct. 1068, 1070, 22 L.Ed.2d 227 n.3 (1969), limited the rule of *Sunal* to non-constitutional errors; but the credibility of a witness is not a constitutional issue.

The remaining three grounds in the section 2255 motion are constitutional, and *Kaufman* holds that the failure to raise a constitutional issue on direct appeal does not prevent raising it later in a section 2255 motion unless the movant was deliberately bypassing the appellate process. See 394 U.S. at 220 n.3, 89 S.Ct. at 1070 n.3; *Davis v. United States*, 411 U.S. 233, 240, 93 S.Ct. 1577, 1581, 36 L.Ed.2d 216 (1973). Nonetheless the district court held that the appellant was barred from raising these issues in a section 2255 motion. With regard to the principal ground (unduly suggestive photo-identification), the court stated that the failure to raise it on direct appeal was "apparently because of a strategic decision" and that "a deliberate failure to raise an issue on appeal precludes its consideration under § 2255," citing *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Now it is true that the court held, in the alternative, that these issues were without merit; but the importance of enforcing gatekeeping procedures designed to prevent the courts from being flooded by unworthy postconviction motions every one of which must be, unless it is barred by one of those procedures, painstakingly considered on the merits has persuaded us to consider the correctness of the district judge's threshold ruling even though it raises more difficult questions than his alternative ruling on the merits.

■ The district judge was right to doubt that deliberate bypass is still the test for whether a failure to follow normal procedures for raising issues in criminal cases—procedures that include raising issues whenever possible in a direct appeal from the conviction rather than years later in a postconviction proceeding—is a bar to raising such an issue later in a section 2255 motion. *Kaufman* had gotten the standard of deliberate bypass from *Fay v. Noia*, 372

U.S. 391, 438–40, 83 S.Ct. 822, 848–49, 9 L.Ed.2d 837 (1963), where the Supreme Court had held that a criminal defendant's failure to appeal his conviction did not prevent a federal district court in a habeas corpus proceeding from deciding constitutional issues that he could have appealed directly, unless the failure to appeal was, in the circumstances, a deliberate bypass of the state's procedures for correcting erroneous criminal convictions. This aspect of *Fay v. Noia* was overruled in *Wainwright v. Sykes, supra*, 433 U.S. at 87, 97 S.Ct. at 2506, which holds that if a petitioner for federal habeas corpus has not fulfilled the procedural requirements under state law for judicial review of an issue, the federal court may not reach the merits of the issue unless the petitioner shows good cause for his procedural default and prejudice resulting from not being allowed to raise the issue on habeas corpus.

It is true that *Wainwright* involved habeas corpus for state prisoners rather than section 2255 relief for federal prisoners; and many of the reasons given by the Court for its result in *Wainwright* derive from the tensions that federal habeas corpus for state prisoners creates in a federal system and are therefore inapplicable to section 2255 proceedings. On the other hand, whereas enforcing a state procedural default in a federal habeas corpus proceeding bars the petitioner from what is realistically his only access to a federal forum to decide his federal claims, this is not a problem under section 2255—a remedy for people convicted in federal court in the first place. In any event, the Supreme Court's very recent decision in *United States v. Frady*, —— U.S. ——, ——, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816, 830 (1982), ends these speculations by extending the *Wainwright* test to section 2255 proceedings.

Now it may well be a fair inference to draw from *Wainwright* and *Frady* that a procedural default will bar subsequent review in a section 2255 proceeding unless good cause for and prejudice from the default are shown, even if the applicable statute or rule of procedure does not provide, as it did provide in both of those cases, that

the failure to raise an issue in the fashion prescribed bars the criminal defendant from raising it later. If so, we could dispose rather quickly of two of the three remaining grounds in this section 2255 motion— that the trial judge was biased and that the jury was racially prejudiced. The appellant failed to take any steps at his trial to correct either of these alleged errors. He did not file an affidavit of bias with the trial judge, see 28 U.S.C. § 144, and he did not ask the judge to question the jury, during the voir dire, regarding their racial prejudices, see, e.g., *Savage v. United States*, 547 F.2d 212, 217 (3d Cir. 1976). He has presented no reason for his failure to take these steps.

But we need not decide whether these defaults at trial bar the appellant from relief under section 2255. A decision on that ground would not enable us to dispose of this appeal in its entirety, because it would leave unresolved the last ground in the appellant's motion: that a witness at the trial was prompted to identify the appellant by an unduly suggestive photographic exhibit that had been prepared by the prosecution. Because this allegation raises a constitutional issue (under the due process clause of the Fifth Amendment, see, e.g., *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)), *Sunal v. Large, supra*, cannot be used to prevent us from considering it on the merits. And because the appellant pressed the issue at trial, we could not dispose of it on the same ground that we have suggested might be available to decide the appellant's judge and jury prejudice claims. Hence if the appellant is barred from raising this issue in a section 2255 motion, it can only be because he failed to raise it in his direct appeal from his conviction and has offered no reason for that failure, which the district court conjectured was "strategic." This means that in order to decide whether the district court was correct in holding that it did not have to reach the merits of any of the grounds for relief presented in the appellant's section 2255 motion, we must decide whether failure to raise a claim in a

direct appeal bars raising it later by way of a section 2255 motion unless there is a showing of good cause for so irregular a procedure. And our answer to this question, if it is in the affirmative, will automatically resolve the question whether the district court was not required to reach the merits of the judge and jury prejudice claims either, and will therefore make it unnecessary for us to decide the additional question whether a procedural default at trial bars relief under section 2255 even if the default is not governed by a rule that provides that an issue on which the defendant has defaulted may not be raised later.

This brings us, at last, to the central issue in this case, which is whether *Kaufman* is still good law. If it is, the court below was wrong to hold that the appellant could not raise in his section 2255 motion issues that he could have raised but did not raise in his direct appeal; for the Supreme Court held in *Kaufman* that failure to raise an issue on appeal is not in and of itself a deliberate bypass of the appellate process. But after *Wainwright* pulled the rug out from under *Kaufman* (and from under *Davis v. United States, supra,* which repeated the holding in *Kaufman,* and like *Kaufman* preceded *Wainwright*), by repudiating the deliberate bypass standard that the Court in *Kaufman* had gotten from *Fay v. Noia,* the continued survival of *Kaufman* has been questioned in a number of decisions. *Sincox v. United States,* 571 F.2d 876, 879–80 (5th Cir. 1978), held that the deliberate bypass standard of *Kaufman* had been superseded by the cause and prejudice standard of *Wainwright.* Cf. *Huffman v. Wainwright,* 651 F.2d 347, 350 (5th Cir. 1981). Two district court decisions in this circuit take the same approach as the Fifth Circuit in *Sincox* : the decision below; and *Ramsey v. United States,* 448 F.Supp. 1264, 1273 n.18, 1274 (N.D.Ill.1978), which contains a full and forceful argument for the approach. The District of Columbia Circuit has left open the question whether the deliberate bypass standard of *Kaufman* or the cause and prejudice standard of *Wainwright* governs in failure-to-appeal cases. *United States v. Barnes,* 610 F.2d 888, 892–94 (D.C.Cir.1979). Most courts, including our own, have continued to apply the deliberate bypass standard but without discussion of the possible effect of *Wainwright* on it. See, e.g., *Hutul v. United States,* 582 F.2d 1155 (7th Cir. 1978). However, in *Guzzardo v. Bengston,* 643 F.2d 1300, 1304 (7th Cir. 1981), we expressly declined to extend *Wainwright* to the failure-to-appeal situation, but without an examination of the issue; instead we placed denial of the section 2255 motion on an alternative ground. We decline to postpone the day of reckoning yet again.

At least one court has implied that failure to appeal, if unexplained, is in itself a deliberate bypass of normal procedures, see *United States v. Little,* 608 F.2d 296, 300 (8th Cir. 1979); cf. *United States v. West,* 494 F.2d 1314 (2d Cir. 1974)—an approach that is, of course, contrary to *Kaufman,* and reaches the same result as *Sincox.* We have found only one decision, addressing the effect of *Wainwright* on *Kaufman,* that squarely holds that deliberate bypass remains the standard applicable to a failure to appeal. *Pacelli v. United States,* 588 F.2d 360, 363–65 (2d Cir. 1978). And the precise significance of *Pacelli* is somewhat in doubt, for it cites and discusses *United States v. West, supra,* with apparent approval. See 588 F.2d at 363, 365.

All of these decisions predate *Frady.* The reluctance of the courts of appeals to declare a Supreme Court decision defunct is understandable, especially since, as mentioned, *Wainwright* relied on factors relating to the abrasive potential of federal court intervention in the state criminal process that are inapplicable to section 2255. But these doubts are dispelled by *Frady,* which applied the *Wainwright* standard to a section 2255 case. It is true that the Court in *Frady* did not discuss or even cite *Kaufman.* But it had no occasion to do so. Since it held that the movant was barred by a procedural default at trial, it did not have to decide whether section 2255 also was unavailable because the movant had failed to appeal.

Though it is always perilous to rest decision on general language in an opinion, the

tenor of the Supreme Court's opinion in *Frady* strongly suggests that the cause and prejudice standard of *Wainwright* applies not only to a procedural default by the section 2255 movant at trial but also to his failure to appeal. In holding that a procedural default at trial (specifically, failure to object to jury instructions) bars a section 2255 proceeding unless cause and prejudice are shown, even if the effect is to prevent the correction of a plain error committed at trial, the Court stated that "the 'plain error' standard is out of place when a prisoner launches a collateral attack against a criminal conviction after society's legitimate interest in the finality of the judgment has been perfected by the expiration of the time allowed for direct review or by the affirmance of the conviction on appeal." —— U.S. at ——, 102 S.Ct. at 1592, 71 L.Ed.2d at 827–28. "Once the defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum. Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless post-conviction collateral attacks." —— U.S. at ——, 102 S.Ct. at 1593, 71 L.Ed.2d at 828. Against this background the Court's further statement that "a collateral challenge may not do service for an appeal," *id.*, takes on special relevance to the issue in the present case; for when a criminal defendant fails to appeal an issue he has pressed at trial, and then later seeks to raise that issue in a section 2255 proceeding, he is making a collateral challenge do service for an appeal.

The Court in *Frady* also thought it significant that a federal prisoner, "unlike his state counterparts, has already had an opportunity to present his federal claims in federal trial and appellate forums." —— U.S. at ——, 102 S.Ct. at 1593, 71 L.Ed.2d at 829. Finally, the Court remarked on Frady's "double procedural default." —— U.S. at ——, 102 S.Ct. at 1594, 71 L.Ed.2d at 830. The first default occurred when he

failed to object to the jury instructions at trial. The second occurred when he failed to attack those instructions on appeal, since the appellate court could have corrected the alleged error, if it was plain, despite his failure to object. The Court thus regarded a failure to appeal as a procedural default, as did the Fifth Circuit in *Huffman v. Wainwright, supra,* 651 F.2d at 350, and, the context suggests, a procedural default subject to the cause and prejudice standard of *Wainwright,* which *Frady* makes applicable to section 2255 proceedings. This in turn implies that Norris's failure to appeal on the grounds later asserted in his section 2255 motion is a bar to considering those grounds on the merits under section 2255 unless cause for and prejudice from the failure to appeal are shown.

At least *Frady* casts sufficient doubt on the continued vitality of *Kaufman* to allow us to consider as an original question whether failure to appeal on a ground later raised in a section 2255 motion should bar the motion unless good cause for not appealing is shown. To take an appeal, and as it were reserve several issues for a second appeal to be taken from the denial of a section 2255 motion after the first appeal is decided, so that as in this case the appellant is allowed to split his appeal into two pieces heard more than four years apart, is to engage in piecemeal litigation in as blatant a form as can be imagined. In some cases there may be a good reason for this weird procedure—such as incompetence of counsel in the first appeal, newly discovered evidence, or an intervening change in the law—and if so the appellant will be able to demonstrate good cause for his failure to appeal the first time and will therefore be allowed to appeal a second time. But we do not think the government should be required to prove, what is moreover usually unprovable, that the first default was an attempt "deliberately" to bypass normal procedures for judicial review. Especially at a time when the federal courts are drowning in litigation, the presumption is against piecemeal litigation and it is the movant's burden to overcome the presump-

tion by showing that he has a good reason for proceeding in this manner. Perhaps, as intimated in *Davis v. United States, supra,* 411 U.S. at 239–41, 93 S.Ct. at 1581, the failure to make a contemporaneous objection is a more serious procedural default than splitting one's appeal is. But it does not follow that the latter is trivial, and should, when as here it is unexcused, carry no sanction.

In holding that the cause and prejudice standard rather than the deliberate bypass standard is applicable to failures to appeal, we are not "overruling" *Kaufman,* any more than the Fifth Circuit "overruled" *Kaufman* when it reached the same conclusion that we reach today with greater confidence than the Fifth Circuit could have had because we have the benefit of *Frady* and it did not. Constitutional law is very largely a prediction of how the Supreme Court will decide particular issues when presented to it for decision. Ordinarily the best predictor of how the Court will decide an issue in a future case is how it decided the same issue in a past case, and when that is so the law is what is stated in the earlier decision. But sometimes later decisions, though not explicitly overruling or even mentioning an earlier decision, indicate that the Court very probably will not decide the issue the same way the next time. In such a case, to continue to follow the earlier case blindly until it is formally overruled is to apply the dead, not the living, law.

■ The application of the cause and prejudice standard to the facts of this case is straightforward. The appellant gave no reason for not complaining about the trial judge's denial of his photo-identification claim, and about the judge's and jury's alleged prejudice against him, in his direct appeal from his conviction. He does say that his court-appointed attorney "did not present the whole true case to the Appeal Court," but that is just another way of saying that he wants to bring up to us grounds not included in his direct appeal; it does not establish good cause for splitting his appeal.

AFFIRMED.

CUDAHY, Circuit Judge, concurring.

I agree with the majority's treatment of the first four grounds raised in Norris' section 2255 petition. However, I would reject Norris' three remaining claims on their merits, rather than disposing of them on a waiver theory. I am especially troubled by the majority's application of the "cause and actual prejudice" standard to Norris' suggestive identification claim because, as the majority acknowledges, this disposition is not consistent with well-established Supreme Court authority. Thus, I join the majority opinion only to the extent that it denies relief on the first four grounds, and concur in the judgment affirming the district court's denial of section 2255 relief.

I.

As the majority acknowledges, the lower federal courts have been unable to agree about the effect of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), particularly with respect to the continued viability of *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and *Kaufman v. United States,* 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969). But, for the reasons suggested below, the ongoing applicability of the pertinent aspects of these latter decisions seems clear enough to me. Moreover, for at least four reasons, I think it is unacceptable to assume the demise of recognized Supreme Court precedent on a crucial question in a case in the posture of the one before us.

First, the Government only half-heartedly relies in this court upon the "deliberate bypass" standard, and does not even urge us to apply the "cause and actual prejudice" standard. Of course, it does not ask us to reconsider either *Kaufman* or *Fay*; nor apparently did it make either of these requests for reconsideration below.

Second, contrary to the majority's assertion, the district court did not hold, as an alternative basis for its decision, that Norris is barred from raising the three remaining issues presented in his section 2255 petition

because he failed to show "cause and actual prejudice"; nor did the district court "doubt"—correctly or otherwise—"that deliberate bypass is still the test for whether a failure to follow normal procedures for raising issues in criminal cases . . . is a bar to raising such an issue later in a section 2255 motion." *Ante* at 900–901.

Regarding Norris' suggestive identification claim, the district court stated: "This argument was not raised in the petitioner's appeal, apparently because of a strategic decision. Normally, a deliberate failure to raise an issue on appeal precludes its consideration under § 2255, *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)." Memorandum Opinion and Order at 3. At best, this statement, which constitutes the court's entire discussion of the waiver issue, may be a finding that Norris' decision not to raise the identification claim on appeal was a strategic choice. If so, the factual basis for such a conclusion is not apparent from the record.[1] To the extent that the court's memorandum may hold that Norris' unexplained failure to raise the identification issue on appeal constitutes a deliberate bypass, even the majority recognizes that this would be inconsistent with *Kaufman*. *Ante* at 902. Presumably, an experienced district judge purporting either to rule in a manner patently inconsistent with controlling Supreme Court precedent or to hold that the precedent was no longer viable would, at least, cite the case in question and discuss why it was not controlling. As shown above, the district court in this case did neither. Moreover, it is likely that such an important district court decision would have been published. Yet, the instant one was not. Thus, it is unreasonable to construe the district court's disposition in the manner suggested by the majority.

Third, the petitioner in the instant case is *pro se* and we have not had the benefit of oral argument. I have not requested that counsel be appointed and that the case be orally argued because I believe it unnecessary, as well as improper, to decide this case on the rationale followed by the majority. Nevertheless, these procedures would appear to be appropriate if this case is to be the vehicle for fundamental changes in direction of the requirements of habeas procedure. Norris' lack of counsel and legal expertise hampers him in at least two ways. First, it leaves him unable to present effective arguments in response to the majority's waiver analysis. An examination of Norris' brief reveals no attempt to do so.[2] Second, because Norris is *pro se*, his chances of successfully petitioning for rehearing in this court and, failing in that endeavor, petitioning for a writ of certiorari in the Supreme Court are not good, rendering today's decision effectively unreviewable. Moreover, I am extremely reluctant, apparently more so than the majority, to decide an issue of such importance to so many federal prisoners without the pros and cons being aired by counsel with the ability and opportunity to respond directly to our concerns at oral argument.

Finally, the majority also has unfortunately overlooked the criteria under which the need for oral argument is supposed to be determined. The pertinent rules list three criteria for dispensing with oral argument:

(1) the appeal is frivolous; or

(2) the dispositive issue or set of issues has been recently authoritatively decided; or

(3) the facts and legal arguments are adequately presented in the briefs and the decisional process would not be significantly aided by oral argument.

---

1. Of course, to the extent that a deliberate bypass has been shown, I would agree that the instant petition would be barred.

2. But, as discussed above, a fair reading of the district court's memorandum and the Government's brief would not have indicated to Norris that it would be necessary to discuss whether "deliberate bypass" was still the applicable waiver test with respect to his identification and bias claims. Although the district court and the Government cite *Wainwright*, both rely on the "deliberate bypass" test. As indicated in note 1, *supra*, "to the extent that a deliberate bypass has been shown, I would agree that the instant petition would be barred."

Fed.R.App.P. 34(a); Circuit Rule 14(f). Clearly, none of these criteria is satisfied in the instant case under the majority's *ratio decidendi.* Indeed, it may well be that this case, to the extent that it is decided on the waiver theory, satisfies the criteria for granting a rehearing *en banc. See* Circuit Rule 16(b) (appeal is exceptionally important or decision is inconsistent with decision of United States Supreme Court, this court, or another court of appeals). If *Kaufman* were a decision of this court, the majority opinion would have to be circulated to all its active judges *sua sponte. See* Circuit Rule 16(e).

## II.

Although I would not decide this case on a waiver theory, I am compelled to respond to the majority's analysis. The majority's suggested application of *United States v. Frady,* —— U.S. ——, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), is troublesome. In *Frady,* which is so central to the majority's analysis, a federal prisoner convicted of first-degree murder failed to comply at trial with Rule 30 of the Federal Rules of Criminal Procedure, which provides:

> No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

The determinative issue was whether Criminal Rule 52(b)—the "plain error" rule—applies in a section 2255 proceeding, or whether Frady's procedural default at trial (i.e., his failure to comply with Criminal Rule 30) barred his challenge to the trial court's instruction on the meaning of malice in a subsequent section 2255 proceeding. The Court simply held that Criminal Rule 52(b) did not apply and that Frady's ability to litigate the jury instruction claim in a collateral proceeding was to be determined according to the "cause and actual preju-

dice" standard first articulated in *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973).[3]

The *Frady* rule, of course, is but the most recent antithesis in the federal habeas dialectic. The scope of the writ has fluctuated almost continuously both in terms of the issues cognizable under it and the procedural net surrounding it. *See, e.g., Wainwright v. Sykes,* 433 U.S. 72, 77–85, 97 S.Ct. 2497, 2501–02, 53 L.Ed.2d 594 (1977) (Rehnquist, J.); *Fay v. Noia,* 372 U.S. 391, 399–427, 83 S.Ct. 822, 827–842, 9 L.Ed.2d 837 (1963) (Brennan, J.); *Id.* at 449–63, 83 S.Ct. at 854–861 (Harlan, J., dissenting) (all discussing history of writ). However, with respect to both state and federal prisoners, the doctrine according to which a procedural default at trial bars subsequent litigation of a claim in a collateral proceeding, regardless of its merits, consistently has been applied only in the presence of an established "contemporaneous objection" rule. *See Frady, supra; Engle v. Issacs,* —— U.S. ——, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (state prisoners' challenges to jury instructions barred because of their failure to comply with Ohio Rule Crim.P. 30, absent "cause and actual prejudice" for such procedural default); *Wainwright v. Sykes, supra* (state prisoner's federal habeas litigation of *Miranda* claim precluded because of procedural default under Fla.R.Crim.P. 3.190(i)); *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976) (state prisoner's failure to comply with Art. 202 of Louisiana Code of Criminal Procedure (1928)); *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973) (federal prisoner's failure to comply with Fed.R.Crim.P. 12(b)(2)). In the absence of such an established rule, there simply can be no procedural default. *Pacelli v. United States,* 588 F.2d 360, 363 n.8 (2d Cir. 1978), *cert. denied,* 441 U.S. 908, 99 S.Ct. 2001, 60 L.Ed.2d 378 (1979).[4] Consequently, the Court has not

---

**3.** The *Frady* Court did not consider the "cause" for the defendant's procedural default because it found that no "actual prejudice" had resulted from the giving of the challenged instruction. Thus, it found that the petitioner could not

litigate the jury instruction claim in a section 2255 proceeding. 102 S.Ct. at 1595–98.

**4.** The District of Columbia Circuit has also acknowledged that, absent an applicable "contemporaneous objection" rule, the preclusive

applied a "waiver" analysis in such circumstances. *See County Court of Ulster County v. Allen*, 442 U.S. 140, 148–54, 99 S.Ct. 2213, 2220–23, 60 L.Ed.2d 777 (1979) ("[I]f neither the state legislature nor the state courts indicate that a federal constitutional claim is barred by some procedural rule, a federal court implies no disrespect for the State by entertaining the claim."); *cf. Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977) (state prisoner's ability to bring federal habeas challenge to trial court's failure to give an unrequested jury instruction not determined according to "procedural default" analysis, but by application of the rule of *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)); *Lefkowitz v. Newsome*, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975) (because, under state law, petitioner's guilty plea did not preclude his subsequent constitutional challenge to the denial of a suppression motion, and state statutory requirements were otherwise satisfied, federal habeas relief was available).

Apparently, no established "contemporaneous objection" rule governs Norris' "judge bias" and "jury prejudice" claims. With respect to the former, the majority indicates in dicta that Norris' failure to comply with 28 U.S.C. § 144 may bar him from litigating the "judge bias" claim here. Although that statute provides a mechanism for challenging a trial judge's alleged personal bias or prejudice, however, unlike the rules applicable in those cases discussed above in which the Court applied a waiver analysis, section 144 does not, on its face, establish a procedural bar if it is not utilized. The majority has not cited, nor have I found, any authority for construing Section 144 as involving such a consequence.

Thus, the *Frady* rule is inapplicable to this claim.[5]

Regarding Norris' "jury prejudice" claim, the majority cites *Savage v. United States*, 547 F.2d 212 (3d Cir. 1976), *cert. denied*, 430 U.S. 958, 97 S.Ct. 1608, 51 L.Ed.2d 810 (1977). However, although perhaps facially similar to the waiver ground suggested by the majority in the instant case, the actual basis for the decision in *Savage* was the court's characterization of the defendant's constitutional right. Quoting from *Ristaino v. Ross*, 424 U.S. 589, 597, 96 S.Ct. 1017, 1021, 47 L.Ed.2d 258 (1976), the *Savage* court acknowledged that a criminal defendant has a constitutional right to have the trial court ask prospective jurors "questions designed to identify racial prejudice" upon request. 547 F.2d at 217. Absent such a request, however, the defendant's right simply has not been abridged. In this regard, *Savage* is like *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (right not to be compelled to stand trial in prison clothes not abridged absent a request not to be so tried).

Thus, *Savage* is not authority for applying a waiver analysis to Norris' "jury prejudice" claim, although I acknowledge that in the instant case under either a waiver analysis or the analysis which I have suggested Norris would lose. Nevertheless, because the distinction may be significant in other cases, I would not characterize Norris' failure to request questions about the jurors' racial prejudice as a waiver subject to the "cause and actual prejudice" standard in a section 2255 proceeding. It is some consolation that with respect to Norris' "judge bias" and "jury prejudice" claims the majority does not decide whether Norris' failure to raise them at trial bars his litigation

---

effect of a failure to raise an issue at trial must be determined according to the "deliberate bypass" standard. However, more recently, that court has questioned the continued viability of its rule in the light of *Wainwright v. Sykes*, and directed the district court to consider the question after conducting an evidentiary hearing. *United States v. Barnes*, 610 F.2d 888, 893–94 (D.C.Cir.1979). Similarly, as noted above, we have not had the benefit of briefing, oral argument, or a lower court decision on this issue in

the instant case. Thus, at the very least, the majority has not exercised what I would regard as proper judicial restraint.

5. On the merits of this claim I would simply hold, as did the district court, that Norris' allegations of bias, most of which concern adverse trial court rulings, are simply insufficient. *See United States v. English*, 501 F.2d 1254 (7th Cir. 1974).

of them in the instant petition, absent "cause and actual prejudice." *Ante* at 901–902.

### III.

The majority's treatment of Norris' failure to appeal is fundamentally flawed because it conflicts with well-established and controlling precedents of the Supreme Court. Thus, the habeas petitioner in *Fay v. Noia, supra,* unsuccessfully sought to suppress his confession at trial. However, because he could have received the death penalty if retried following a successful appeal, he did not further contest the admission of the confession in the state courts by appealing his conviction. The Court held that, because it was not a "deliberate bypass," the petitioner's failure to challenge the admission of his confession on appeal did not preclude federal habeas relief on the basis of the coerced confession claim. Six years later, in *Kaufman v. United States,* 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), the Court held that a federal prisoner who had properly presented a fourth amendment claim at trial, but had not raised it on direct appeal, could obtain section 2255 relief on that claim because his failure to raise it on direct appeal also was not a "deliberate bypass."

Then, in *Davis v. United States, supra,* the Court first applied the "cause and actual prejudice" standard to bar a federal prisoner's litigation in a section 2255 proceeding of a grand jury discrimination claim which he had not raised by motion before trial, as required by Fed.R.Crim.P. 12(b)(2). The

*Davis* Court distinguished *Kaufman* on the ground that *Kaufman* did not implicate a rule such as Criminal Rule 12(b)(2) but involved a failure to appeal. 411 U.S. at 239–40, 93 S.Ct. at 1581.[6]

The majority demeans *Davis* when it states that it simply "repeated the holding in *Kaufman . . . ."* *Ante* at 902. *Davis* explicitly acknowledged a distinction between a failure to raise a claim at trial and a failure to appeal. This distinction is a necessary predicate of the *Davis* decision. Under *Fay* and *Kaufman,* the preclusive effect of a failure to appeal is determined according to the "deliberate bypass" standard, not the "cause and actual prejudice" standard which the majority applies here. Moreover, contrary to the majority's assertion, *Wainwright v. Sykes, supra,* undermined neither *Fay* nor, by implication, *Kaufman,* because it involved a failure to raise a claim at trial, and not a failure to appeal an issue which had been properly presented at trial.[7] In this regard, the *Sykes* court expressly stated:

> We have no occasion today to consider the *Fay* rule as applied to the facts there confronting the Court. Whether the *Francis [v. Henderson, supra]* rule should preclude federal habeas review of claims not made in accordance with state procedure where the criminal defendant has surrendered, other than for reasons of tactical advantage, the right to have all of his claims of trial error considered by a state appellate court, we leave for another day.

---

6. In both *Sincox v. United States,* 571 F.2d 876 (5th Cir. 1978), and *Ramsey v. United States,* 448 F.Supp. 1264, 1273–74 (N.D.Ill.1978), upon which the majority relies, *ante* at 902, there is no discussion of the distinction between procedural defaults at trial and on appeal, which was acknowledged in *Davis.*

7. The often stated principle that a federal prisoner may not use a section 2255 proceeding as a substitute for a direct appeal, *Frady,* 102 S.Ct. at 1593, *ante* at 902–903, has nothing to do with the waiver doctrine. Rather, this principle limits the issues cognizable in a collateral attack on a federal conviction. *E.g., United States v. Timmreck,* 441 U.S. 780, 99 S.Ct.

2085, 60 L.Ed.2d 634 (1979) (technical violation of Criminal Rule 11); *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (failure to invite defendant to speak at sentencing); cf. *Hussong v. Warden, Wis. State Reformatory,* 623 F.2d 1185 (7th Cir. 1980) (federal habeas relief unavailable to state prisoner on claim that evidence seized in violation of federal wiretap statute was admitted at trial). As a means of ensuring that the writ is utilized only to correct manifest injustice, a limitation on the issues cognizable may be more sensible than procedural barriers. *Rose v. Lundy,* —— U.S. ——, 102 S.Ct. 1198, 1213–20, 71 L.Ed.2d 379 (1982) (Stevens, J., dissenting).

The Court in *Fay* states its knowing-and-deliberate-waiver rule in language which applied not only to the waiver of the right to appeal, but to failures to raise individual substantive objections in the state trial. Then, with a single sentence in a footnote, the Court swept aside all decisions of this Court "to the extent that [they] may be read to suggest a standard of discretion in federal habeas corpus proceedings different from what we lay down today . . . ." 372 U.S. at 439 n.44, 83 S.Ct. at 849. We do not choose to paint with a similarly broad brush here.

*Wainwright v. Sykes*, 433 U.S. at 88, 97 S.Ct. at 2507.

I disagree with the majority's statement that *"Frady* casts sufficient doubt on the continued viability of *Kaufman* to allow us to consider, as an original matter, whether the failure to appeal on a ground later raised in a section 2255 motion should bar the motion unless good cause for not appealing is shown." *Ante* at 903–904. The Court had no occasion to, and did not, reconsider *Kaufman* in *Frady*, as the majority concedes. *Ante* at 902–903. "[I]t is perilous to rest [a] decision on general language in an opinion . . . ." *Id.* Nevertheless the majority's conclusion depends almost entirely on such language in *Frady*.

The majority urges that we seek out the living law and not be content with the dead. *Ante* at 904. I would be the last to denigrate this unexceptionable aspiration, but somehow I do not recognize it in the form discerned by the majority. We are not here to predict, even when there is controlling Supreme Court precedent, "how the Supreme Court will decide particular issues when presented to it for decision." *Ante* at 904. (This is not a case in which there is no Supreme Court precedent on point, but one in which the determinative question has been definitively answered by the Court fairly recently.) Somehow *stare decisis* has come a cropper if we are to seriously pursue the majority's approach. Any hope of certainty must be abandoned if the majority has its way. More than the inclinations of a majority of the Supreme Court, or of a panel of the court of appeals, must shift before a controlling precedent can be declared defunct. *See White v. Finkbeiner*, 687 F.2d 885, 889–890 (7th Cir. 1982), *cert. filed*, (June 18, 1982).[8]

The question decided by the majority is not one of Constitutional law, as the majority apparently believes, *ante* at 9, but one of statutory interpretation. *Stone v. Powell*, 428 U.S. 465, 481 n.16, 96 S.Ct. 3037, 3046 n.16, 49 L.Ed.2d 1067 (1976) ("The issue in *Kaufman* was the scope of § 2255.").[9] Only the other day, the Supreme Court discussed some of the factors it considers when determining whether to overrule or reconsider one of its prior decisions interpreting a statute. *See Patsy v. Florida Board of Regents*, —— U.S. ——, ——, 102 S.Ct. 2557, 2560, 73 L.Ed.2d 172 (1982). These factors include: whether the decision misconstrued the meaning of the statute as revealed by the legislative history; whether overruling the decision would be inconsistent with

**8.** To the extent that we should base our decisions on our ability to prognosticate how the Supreme Court currently would decide a question, I am not as sure as the majority that the Court now would abandon the pertinent aspects of *Fay, Kaufman*, and *Davis*. As indicated, *infra* at 909–910, the Chief Justice and Justice Rehnquist, surely two of the Court's leaders in the movement to curtail habeas jurisdiction, have recognized in their opinions that there is a valid distinction between a procedural default at trial and a failure to appeal. Indeed, *Davis* which first articulated this distinction was written by Justice Rehnquist. Justices Powell and Stevens, on the other hand, have indicated a preference for limiting habeas

jurisdiction along substantive lines rather than by application of "gatekeeping" rules. *See* note 7, *supra; see also Schneckloth v. Bustamonte*, 412 U.S. 218, 250–75, 93 S.Ct. 2041, 2059–72, 36 L.Ed.2d 854 (1973) (Powell, J., concurring). Thus, it is not clear to me that five justices currently would adopt the majority's approach, at least, not in the face of contrary Supreme Court precedent. Certainly, it is not clear enough to be the basis of our decision here.

**9.** Of course, if *Fay, Kaufman*, and *Davis* do rest on Constitutional ground, today's decision is all the more inappropriate.

more recent expressions of Congressional intent; whether the decision constituted a departure from prior decisions; and whether overruling the decision would frustrate legitimate reliance on it. The majority does not even discuss these factors, but apparently none of them are satisfied in the instant case. We are not the Supreme Court, and our role in directing the ebb and flow of habeas jurisdiction is drastically more limited than that of the Court. *Cf. White v. Finkbeiner, supra,* 687 F.2d at 890 (prudence dictates leaving expansion of *Stone v. Powell* to Supreme Court). Finally, we should be exceedingly reluctant to "reconsider" Supreme Court precedent. Thus, as discussed in Part II, *supra* at 906–907, *see also Wainwright v. Sykes,* 433 U.S. at 81, 97 S.Ct. at 2503, although the Court perhaps has not been especially unwilling to reconsider its decisions construing the habeas statutes, we ought to be.

Returning to the procedural merits, it seems only fair to apply a different, and more forgiving, waiver standard to a failure to appeal than the standard applied to a failure to raise an issue at trial. Procedural defaults at trial do not require, and usually do not involve, a personal choice on the part of an untutored defendant. Rather, they are made by counsel, who presumably knows the law and acts in a calculating manner. On the other hand, the decision to appeal, such as the choice faced by the petitioner in *Fay v. Noia,* implicates "the exercise of volition by the defendant himself . . . ." *Wainwright v. Sykes,* 433 U.S. at 92, 97 S.Ct. at 2509 (Burger, C. J., concurring). Thus, the decision to appeal is like the decision to enter a plea of guilty. In both cases, it is unreasonable to give preclusive effect to the decision absent proof that the defendant personally made an informed and calculated choice. The "deliberate bypass" standard requires such proof while the "cause and actual prejudice" standard does not. Also, unlike the failure to raise an issue at trial, which might enable the trial court to correct or avoid an error, a failure to appeal does not itself contribute to the introduction of addi-

tional error. *See Henderson v. Kibbe,* 431 U.S. at 157–58, 97 S.Ct. at 1738 (Burger, C. J., concurring); *Mullaney v. Wilbur,* 421 U.S. 684, 704 n.*, 95 S.Ct. 1881, 1892 n.*, 44 L.Ed.2d 508 (1975) (Rehnquist, J., concurring). Finally, to the extent that application of the "cause and actual prejudice" standard to an "appellate default" protects against "sandbagging" more efficaciously than application of the "deliberate bypass" standard, the "laches" doctrine, which also applies in habeas proceedings, *see* Rule 9, Rules Governing § 2254 Cases; Rule 9, Rules Governing § 2255 Cases and Advisory Committee Notes, ensures that habeas relief will not be granted where a petitioner has delayed bringing his claim so·long that the State or the Government has been prejudiced.

The majority states that in some cases there may be certain good reasons to permit a prisoner who has not raised a constitutional issue on direct appeal that he preserved at trial to raise that issue in a habeas proceeding. The reasons suggested are: incompetent counsel in the first appeal, newly discovered evidence, or an intervening change in the law. The majority is reassured that where such a good reason exists, a petitioner will be permitted to litigate a claim which otherwise would have been waived. *Ante* at 903–904. But, this analysis holds out a false hope, if only because it ignores the other half of the standard the majority applies—"actual prejudice." Consider Norris' judge bias claim. Even if Norris could overcome the first hurdle—"cause"—he still would have to demonstrate "actual prejudice." Does this mean he would have to cite trial court rulings which, but for the judge's alleged bias, would have been made more favorably to the defendant? Or does "actual prejudice" suggest that more favorable rulings would have resulted in a more favorable verdict? If, as the majority asserts, the "deliberate bypass" standard places an impossible burden of proof on the Government, *Ante* at 904, then surely the same must be said of the burden placed on pris-

oners by the "cause and actual prejudice" standard.[10]

For all of these reasons, I would apply the "deliberate bypass" standard to Norris' suggestive identification claim. Because nothing in the record reveals such a calculated choice, I would dispose of this claim on its merits rather than on a waiver theory.

Turning to the merits of the photo-spread claim, I agree that Norris is not entitled to habeas relief. Identification testimony may not be introduced where it derives from identification procedures that are "so impermissively suggestive as to give rise to a very substantial likelihood of irreparable misidentification.", *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *see Manson v. Braithwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Stovall v. Denno*, 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). The focus of the court's inquiry must be on the likelihood of irreparable misidentification, *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). Even if the challenged identification procedure may be considered suggestive, the "corrupting effect" of the suggestiveness must be weighed against the indicia that the identification was nevertheless reliable. *Manson v. Braithwaite*, 432 U.S. at 114, 97 S.Ct. at 2253. Factors indicating reliability include: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation and the time between the crime and the confrontation." *Id.*, citing *Biggers*, 409 U.S. at 199–200, 93 S.Ct. at 382.

Unfortunately, the present record does not contain the allegedly suggestive photographic display that was introduced at trial. The display was returned to the FBI after the trial, and the FBI's system of filing physical evidence after trial apparently is such that the display probably cannot be retrieved.[11] Under these circumstances, we should accept, *arguendo*, Norris' assertion of suggestiveness. Nevertheless, the question remains whether the identification testimony was therefore unreliable. More specifically, the question for this court is whether the record contains any indication of unreliability sufficient to warrant further investigation into the fairness of Norris' trial by way of an evidentiary hearing. It does not.

Smith originally selected Norris' picture from "around five or six" photographs shown to him by an agent of the FBI. At the suppression hearing, when Smith was shown the photographic display, he immediately selected Norris' photograph and stated, "That's the one I knowed as Ace." He further testified that he was not sure if the other pictures were the same ones the FBI agent had shown him, and that he was only sure of Norris' photograph. In addition, he testified that when he was first shown the photographic display, he only went through it once to find the picture of the man he knew as Ace.

The only suggestion in the record of the unreliability of Smith's identification of

---

10. A similar proof problem is presented with respect to other claims which might be presented in a collateral attack. For example, assuming that ineffective assistance of counsel constitutes "cause," to raise such a sixth amendment claim in a section 2255 proceeding a prisoner also would have to show that effective counsel would have secured a more favorable outcome. The impossibility of making such a demonstration is well-recognized. Thus, in related contexts, such a demonstration is not required. *See Glasser v. United States*, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). *See also Engle v. Issacs*, 102 S.Ct. at 1580 ("[O]n the Court's present view it will prove easier for a

camel to go through the eye of a needle than for a state prisoner to show "cause.") (Brennan, J., dissenting).

11. Counsel for the Government has informed the clerk of this court that the photographic display might possibly be reconstructed. A reconstructed record, of course, would be better than none at all. However, in light of my conclusion that, even if the display might be considered suggestive, Smith's identification of Norris was nonetheless reliable, we need not view the actual or reconstructed photographic display in order to decide the instant case.

Norris is that Smith was unable to make an in-court identification of him. But there was considerable testimony, including Norris' own admission, that Norris' appearance had changed drastically between the time Smith had dealings with him and the time of trial. Moreover, this issue was exhaustively considered at the trial. Norris' attorney argued forcefully, both to the trial judge during the suppression hearing, and to the jury at closing argument, that Smith's inability to make an in-court identification, coupled with what counsel urged was the suggestive nature of the photo display, rendered Smith's identification of Norris unreliable. Finally, beyond asserting that none of the other photographs resembled his, Norris alleges nothing that tends to show that Smith's identification testimony was unreliable. Thus, nothing in the record or in Norris' motion supports the conclusion that there was "a very substantial likelihood of irreparable misidentification." *Simmons*, 390 U.S. at 384, 88 S.Ct. at 971. For this reason, Norris photospread claim does not warrant collateral relief.

In conclusion, for reasons I have discussed above, I regard "[t]oday's decision [as] a conspicuous exercise in judicial activism ...." *Engle v. Issacs*, —— U.S. ——, 102 S.Ct. 1558, 1576, 71 L.Ed.2d 783 (1982) (Brennan, J., dissenting). Thus, I join only part of the majority opinion but concur in the judgment affirming the district court's denial of Norris' section 2255 petition.

HARLINGTON WOOD, Jr., Circuit Judge, with whom BAUER, Circuit Judge, joins, dissenting from decision not to hear the case *en banc*.

Judge Bauer and I are concerned because a policy issue of importance, which generated a dissent within the panel and "arguably" creates a conflict with a previous decision of this court, is being decided under F.R.A.P. 34(a). That Rule is designed for frivolous cases; or those cases the issues of which have been recently authoritatively decided; or where the facts and legal arguments are adequately briefed and oral argument would not aid the decisional process.

Not only was there no oral argument, but petitioner did not have the benefit, and indirectly this court, of counsel. Believing that our opinions, at least in cases of some significance, preferably should result from the effective functioning of the adversary system, we express no views on the merits of the issue.