**UNITED STATES of America,**
**Respondent,**

v.

**Peter LEVENTOPOULOS, Petitioner.**

**No. 93 C 1032.**

United States District Court,
N.D. Illinois, E.D.

Sept. 23, 1993.

**990**

Asst. U.S. Atty. Steven Miller, Chicago, IL, for U.S.

Pete John Leventopoulos, pro se.

## *MEMORANDUM OPINION AND ORDER*

ASPEN, District Judge:

Presently before the court are Peter Leventopoulos' motion to vacate his sentence pursuant to 28 U.S.C. § 2255 and motion for disqualification and or/recusal pursuant to 28 U.S.C. §§ 144, 455. Leventopoulos claims that he was denied effective assistance of counsel, that he did not have a full opportunity to review his presentence investigation report, and that the government has violated its plea agreement with him. In addition, he alleges various instances of prosecutorial misconduct. For the reasons set forth below, we deny Leventopoulos' motion.

### Discussion

■ It is well established that a convicted defendant who fails to raise constitutional challenges to his conviction on direct appeal is barred from raising those challenges in a § 2255 proceeding, unless the defendant can demonstrate good cause for and prejudice from the failure to appeal. *Norris v. United States,* 687 F.2d 899 (7th Cir.1982). The Seventh Circuit has extended that rule to apply to defendants who plead guilty, in addition to those who are adjudged guilty after a

trial. *Williams v. United States,* 805 F.2d 1301 (7th Cir.1986), *cert. denied,* 481 U.S. 1039, 107 S.Ct. 1978, 95 L.Ed.2d 818 (1987) ("[B]ecause defendants who plead guilty have an opportunity to challenge their sentences directly and in Rule 35 proceedings, we hold that the *Norris* cause and prejudice standard is applicable when these defendants attack their sentences by raising new issues for the first time in a section 2255 proceeding."). Leventopoulos never appealed his sentence, nor did he file a motion to alter his sentence pursuant to Fed.R.Crim.P. 35 based upon any of the grounds included in his current motion.[1] Although he filed a § 2255 motion in the month following his sentence, he did not raise the claims currently before us, nor did he appeal denial of that motion.[2] Instead, he asserts these claims for the first time almost five years after he pled guilty to violating RICO and committing mail fraud. As a result, we will only reach the merits of the various issues he raises if he has demonstrated both good cause for and prejudice from his failure to raise those issues previously.

## I. Effective Assistance of Counsel

Leventopoulos first argues that he was deprived of effective assistance of counsel, primarily because his lawyer was under indictment while representing Leventopoulos. Leventopoulos claims that, during that time, his attorney began working with the government in exchange for lenience in his own case, and that "it was obvious that my defense was being very much compromised in many regards, especially at (the) time of my guilty plea and during the sentencing phase of my trial." Leventopoulos therefore requests that his sentence be vacated, and that he be allowed to withdraw his guilty plea and plead again.

However, Leventopoulos has failed to demonstrate cause for failing to raise the effective assistance of counsel claim on appeal or in a Rule 35 motion. He first argues that his codefendants "filed an appeal" with the Seventh Circuit, and that he was unaware of that filing.[3] This clearly does not establish "cause," as there is no obligation for codefendants to file a joint appeal, or to include all codefendants in any appeal that is filed. His more significant argument is his claim that his lawyer simply failed to file an appeal, and, at an unspecified time after sentencing, informed Leventopoulos that he would no longer represent him. Leventopoulos therefore asserts that he was "left in the dark" with respect to his right to appeal.

Leventopoulos' claims, however, are not supported by the record. The docket reflects that the motion to substitute appointed counsel was made and granted on November 1, 1988. Leventopoulos was therefore represented by counsel during the entire time available for appeal of his sentence or the adverse § 2255 ruling. Furthermore, this representation was not merely illusory; Leventopoulos' attorney filed both the § 2255 motion and a motion for reconsideration of recommendation of deportation during the period following imposition of Leventopoulos' sentence.

The record also reflects that Leventopoulos was repeatedly informed that he may have a right to appeal. When Leventopoulos entered his plea of guilty, Judge Leinenweber explicitly stated that Leventopoulos re-

---

1. Leventopoulos did, however, file a Rule 35 motion to alter his sentence based upon his claimed medical needs, which was granted in part and denied in part. That motion did not raise any of the claims that Leventopoulos sets forth today.

2. Although the government has raised a *Norris* objection to Leventopoulos' petition, it has not challenged the petition on the grounds that Leventopoulos is abusing the writ of habeas corpus by filing a successive petition, as is the government's burden in such cases. *See McCleskey v.*

*Zant,* 499 U.S. 467, ——, 111 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1991). However, we note that the "cause and prejudice" standard to be applied is the same in both cases, so if Leventopoulos has satisfied the *Norris* test, then he has also disproved that he abused the writ.

3. In fact, the various defendants appealed separately, and their appeals were consolidated by the Seventh Circuit on its own motion. *See United States v. Arvanitis,* 902 F.2d 489, 492 (7th Cir.1990).

tained the right to appeal his sentence.[4] Transcript of Proceedings at 13 (March 3, 1988). In addition, when we sentenced Leventopoulos and the other defendants who pled guilty, we specifically stated that "you may or may not have certain rights of appeal. I would suggest that you consult with your attorneys and they will tell you what right of appeal remains, if any, after a plea of guilty and sentence of the Court." Transcript of Proceedings at 144 (June 30, 1988). It is therefore clear that Leventopoulos was made aware that he should consider whether to appeal.

Leventopoulos' only remaining argument is that the ineffective assistance of counsel that he complains infected his guilty plea and sentencing hearing extended beyond his sentencing, and "caused" his failure to appeal. In the abstract, this argument has some appeal; an attorney is unlikely to challenge his own competence by arguing ineffective assistance of counsel on appeal. *See, e.g., United States v. Taglia,* 922 F.2d 413, 418 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991). On the facts of this case, however, we find Leventopoulos' assertions unavailing. First, we note that the attorney of whom Leventopoulos complains actually *did* challenge his own effectiveness in the earlier § 2255 motion; the attorneys for Leventopoulos' codefendants, either in § 2255 motions or on direct appeal, similarly challenged their own competence. *See United States v. Arvanitis,* 694 F.Supp. 510 (N.D.Ill.1988), *affirmed* 902 F.2d 489 (7th Cir.1990).

More important, however, was Leventopoulos' failure to bring his dissatisfaction with his attorney to our attention at an appropriate time. The Seventh Circuit considered a claim similar to Leventopoulos' in *Williams v. United States,* 805 F.2d 1301 (7th Cir.1986), *cert. denied,* 481 U.S. 1039, 107 S.Ct. 1978, 95 L.Ed.2d 818 (1987). There, Williams, the petitioner pled guilty to possession of and dealing in firearms, and was sentenced accordingly. He did not appeal his sentence, but he did file a Rule 35

motion to have his sentence reduced. That motion was denied, and the denial was affirmed on appeal. In a subsequent § 2255 motion, Williams claimed for the first time that he had been "abandoned" by his attorney following sentencing, and that he had been therefore been denied assistance of counsel in his post-sentencing proceedings.

The Seventh Circuit rejected Williams' assertion that he had demonstrated cause for his failure to raise the issue in his earlier proceedings. The court acknowledged Williams' claim that he did not have the benefit of competent legal advice regarding the time limits to appeal or otherwise challenge his sentence. However, the court reasoned:

> [T]here is nothing in the record which would indicate that Williams was dissatisfied with his court-appointed trial attorney who Williams claims abandoned him . . . . [H]e never indicated to anyone, including the trial judge, his displeasure with his first lawyer . . . . Although criminal defendants are accorded the right to counsel at critical stages in the proceedings against them, they must shoulder at least some responsibility in the attorney-client relationship and indicate to the court when, in their minds, appointed lawyers are either not doing their jobs or have ceased their representation entirely. Without such a minimal duty, defendants would be free to remain silent throughout the proceedings and only later challenge their attorneys' actions with direct and collateral attacks upon their convictions and sentences.

*Williams,* 805 F.2d at 1307. Because Williams had failed in his duty to inform the court of his dissatisfaction with his attorney, the court concluded that he could not later claim that he was deprived of effective assistance of counsel.

■ The same is true here. Leventopoulos claims that it was "obvious" to him that his lawyer's performance was unacceptable, but he never communicated his dissatisfaction to the court. Given the tremendous pressure already existent upon the federal

---

4. Judge Leinenweber accepted Leventopoulos' plea of guilty because this court was away from

court attending a judicial conference meeting.

court system, defendants simply may not withhold ripe challenges to their sentences solely to provide themselves a later collateral attack. *See Norris v. United States,* 687 F.2d 899, 903 (7th Cir.1982); *Williams,* 805 F.2d at 1308. This is particularly applicable here, since Leventopoulos is hardly a novice in the criminal justice system. His record includes three other convictions and multiple arrests. In addition, he has demonstrated dexterity in researching and setting forth various legal issues. His apparent familiarity with the legal system further supports the conclusion that he should have played an active role in challenging his sentence or in informing the court of his dissatisfaction with his attorney's performance. *See Williams,* 805 F.2d at 1307–08. Because he failed to do so, he has not demonstrated "cause" for his failure to appeal. Accordingly, we reject Leventopoulos' assistance of counsel claim.[5]

## II. Alleged Violations of Fed.R.Crim.P. 32

■ Leventopoulos claims that he did not have a full opportunity to review his presentence investigation report and contest alleged inaccuracies contained therein as required by Fed.R.Crim.P. 32, and that he was thus sentenced based upon false information in violation of the Fifth Amendment. *See United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972). He also claims that his attorney did not discuss the

alleged inaccuracies with him, further supporting his claim of ineffective assistance of counsel. We need not reach the merits of Leventopoulos' claims because, as above, he has not demonstrated cause for failing to raise these issues on appeal or in one of his earlier post-sentencing proceedings.

Leventopoulos' own petition states, "I was asked to sign my [presentence investigation report] just before I was sentenced and refused to do so because I wanted the opportunity to address the many factual errors I denoted in the same...."[6] It is therefore clear that he knew of the alleged inaccuracies in the report.[7] In addition, he had an opportunity to hear the government orally set forth its version of the offenses committed, which essentially mirrored the information contained in the presentence investigation report. As a result, he was aware of the information in the report at the time he was sentenced. There is no reason, therefore, that he could not have raised the challenge which he brings today either at his sentencing, or on a direct or timely collateral attack on his sentence. In other words, Leventopoulos has not shown cause for his failure to appeal the alleged Rule 32 violation, and we therefore lack jurisdiction to consider it on the merits.[8]

## III. Alleged Violations of Leventopoulos' Plea Agreement

■ Leventopoulos' petition sets forth various promises that he claims were made by

---

5. We note as a general matter that we informed Leventopoulos of the fact that his attorney was under indictment, and Leventopoulos voluntarily chose not to replace his attorney. As a result, even if we were to consider this claim on the merits, we note that Leventopoulos has arguably waived any challenge based upon his counsel's alleged conflict of interest. *See, e.g., Bridges v. United States,* 794 F.2d 1189 (7th Cir.1986).

6. Leventopoulos' reference to signing his presentence investigation report is somewhat unclear, since defendants are neither asked nor expected to sign such reports. We quote this section from Leventopoulos' petition simply to demonstrate that Leventopoulos himself acknowledges that he saw his presentence investigation report before his sentencing and was aware of the alleged inaccuracies contained therein, and was thus in a position to object to the report in a timely fashion.

7. This case is thus distinguishable from *United States v. Johnson,* 607 F.Supp. 258, 263 (N.D.Ill.

1985), in which the petitioner alleged that he never saw the report at all, and thus was completely unaware of the information contained therein.

8. The same is true of Leventopoulos' related ineffective assistance of counsel claim. As noted above, Leventopoulos' dissatisfaction with his attorney was ripe for challenge at the time he was sentenced and during the prescribed period for appeal that followed. His failure to raise any objections at that time precludes him from doing so today. We also note that, in fact, Leventopoulos' attorney *did* make several objections to the information contained in the government's version within the presentence report, and specifically requested that Leventopoulos be sentenced solely for the two offenses to which he pled guilty. *See* Transcript of Proceedings at 93–99 (June 30, 1988). Even on the merits, therefore, Leventopoulos' claim is questionable.

the government prior to or during his sentencing hearing. He alleges that the government has broken those promises, and as a result, his plea was involuntary and entered into in violation of his due process rights, and should be vacated. *See, e.g., Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970). Because he claims that these violations occurred after the period during which he could appeal, Leventopoulos has adequately established cause for failure to raise the issue on appeal. The record, however, contradicts each of Leventopoulos' claims, and he is therefore unable to establish that he has been prejudiced.

■ Leventopoulos first claims that the government agreed not to seek his deportation. Although he is currently subject to a deportation detainer, there is no evidence that the government has violated its promise. The transcripts of the plea and sentencing hearings clearly reflect that at no time did the government request, recommend, or even mention deportation. *See* Transcript of Proceedings at 6–19 (March 3, 1988); Transcript of Proceedings at 51–61 (June 30, 1988). *See also* Presentence Report for Peter J. Leventopoulos, Government's Version at 12. Although the probation officer independently recommended deportation, and we ultimately ordered that Leventopoulos be deported, the *government* (i.e., the prosecutors) did not seek his deportation, and therefore did not violate the plea agreement. *See, e.g., Augustine v. Brewer,* 821 F.2d 365, 369 (7th Cir. 1987) ("Viewed objectively, the plea agreement between petitioner and the government contains nothing to indicate an intent to bind the Parole Commission; consequently, there was no breach of the agreement [when the Parole Commission acted independently].").

■ We similarly reject Leventopoulos' claim that he was promised that he would not have to testify in any trials or proceedings involving any of his codefendants. This issue was the subject of extensive discussions at the time Leventopoulos submitted his plea to Judge Leinenweber. *See* Transcript of Proceedings at 14–18 (March 3, 1988). Leventopoulos initially asserted his belief that he would not be called by the government as a grand jury or trial witness, but the government denied Leventopoulos' assertions, and maintained its right to call him as a witness. Noting the disagreement, Judge Leinenweber invited Leventopoulos to withdraw his plea, and provided him an opportunity to consult with his attorney. Leventopoulos decided to proceed with his guilty plea, and Judge Leinenweber explicitly stated, and Leventopoulos acknowledged, that the government retained the right to subpoena Leventopoulos' testimony in the future. Transcript of Proceedings at 17 (March 3, 1988). The record therefore clearly contradicts Leventopoulos' assertion regarding the government's promises on this issue. To the extent that Leventopoulos is contending that there were various "side deals" to the contrary, we reject his claims as inconsistent with his sworn testimony, and thus not worthy of consideration. *See United States v. Ellison,* 835 F.2d 687, 693 (7th Cir.1987).[9]

Leventopoulos also claims that the government stated that there would be no further investigations or indictments against him regarding the subjects encompassed by his guilty plea. We need not determine whether this promise was actually made, since Leventopoulos does not claim that it has been violated, and the government has stated that it is unaware of any additional charges that have been brought against him. Leventopoulos' assertions regarding this alleged promise are therefore irrelevant.

## IV. Alleged Prosecutorial Misconduct

■ Finally, Leventopoulos has set forth various allegations of misconduct by Assis-

---

9. Furthermore, even if the government had expressly or impliedly promised not to call Leventopoulos as a witness, there is no evidence that such a promise has been broken. The government has not called him to testify, either at trial or before a grand jury. Leventopoulos asserts, however, that the promise has been "somewhat violated," because he has been subpoenaed to testify in a civil litigation brought by one of his extortion victims who is trying to regain property illegally obtained by Leventopoulos. However, the government is not a party to that action, and thus the *government* has not subpoenaed Leventopoulos' testimony. As a result, even if there existed an agreement between the government and Leventopoulos not to require Leventopoulos' testimony, such an agreement was not violated by the subpoena in the pending civil suit.

tant United States Attorney Steven Miller and then United States Attorney for the Northern District of Illinois Anton Valukas. These allegations include claims that (i) Miller pressured Leventopoulos' trial counsel to encourage Leventopoulos to plead guilty by promising to be lenient with that attorney in his own criminal trial; (ii) Miller's father leased property to and received bribes from a friend of one of Leventopoulos' victims; and (iii) Valukas personally threatened attorneys that were considering representing Leventopoulos with tax audits. Again, even if the recent discovery of these alleged actions establishes "cause" for failure to appeal, *cf. United States v. Johnson*, 607 F.Supp. 258, 263 (N.D.Ill.1985), Leventopoulos is utterly unable to establish prejudice.

Leventopoulos acknowledges that his allegations are unsubstantiated, but seeks an evidentiary hearing to further explore his charges. It is well established, however, that the court is not required to hold an evidentiary hearing every time a § 2255 petitioner makes factual allegations. *Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir.1989). Indeed, "[m]ere unsupported allegations cannot sustain a petitioner's request for a hearing." *Id.* Here, Leventopoulos merely states that he "believes" these items to be true, or that they have "been brought to Movant's attention," or freely admits that they "lack investigative verification." He does not identify how he came upon this information, and submits no affidavits to support his allegations. The government, however, has responded with sworn affidavits from both Miller and Valukas directly refuting Leventopoulos' claims. This case thus presents a stronger basis for denying petitioner's request for an evidentiary hearing than that which was sufficient in *Aleman*. *See Aleman*, 878 F.2d at 1014 (denying hearing under similar facts even without government affidavits contradicting petitioner's claims). Because petitioner's allegations are "conclusory, speculative, and palpably incredible," *Aleman*, 878 F.2d at 1014, we deny Leventopoulos' motion.

10. Leventopoulos has stated that he plans to call the court as a witness at any evidentiary hearing we might grant, and thus has also filed a motion for disqualification and/or recusal. In light of our ruling above, we deny Leventopoulos' motion as moot.

**Conclusion**

For the reasons set forth above, we deny Leventopoulos' motion to vacate his sentence.[10] It is so ordered.